John **WELBY**, Plaintiff,

v.

**CONSOLIDATED RAIL CORPORATION**, Defendant.

**Civil No. 86–0582.**

United States District Court, M.D. Pennsylvania.

Feb. 27, 1987.

Michael J. Foley, Thomas J. Foley, Scranton, Pa., for plaintiff.

David C. Eaton, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff filed a Complaint on April 23, 1986 pursuant to the Federal Employers' Liability Act (FELA), the Federal Safety Appliance Act and the Boiler Inspection Act. The gravamen of plaintiff's complaint is that on December 17, 1983, plaintiff suffered a myocardial infarction resulting from improper and unsafe working conditions imposed by defendant. In addition, plaintiff maintains that his condition resulted from defendant's failure to provide proper medical treatment during the course of his employment and from defendant's violation of the Hours of Service Act, 45 U.S.C. § 62(a).

Jury selection and trial in this matter were scheduled for Monday, February 23, 1987. Defendant filed a Motion for Summary Judgment and a brief in support thereof on February 12, 1987 and February 17, 1987, respectively. After jury selection on February 23, 1987, the court set trial in this matter for Monday, March 2, 1987, in order to provide the court with an opportunity to rule on defendant's motion. All briefs having been filed, the motion is ripe for disposition. For the reasons set forth below, defendant's Motion for Summary Judgment will be denied.

## DISCUSSION

Defendant premises its motion on the contention that plaintiff's claim involves no "injury" within the meaning of the FELA, but rather involves a dispute concerning working conditions and as such is subject to mediation, arbitration or adjustment in conference under the provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (Railway Act or RLA). Defendant avers that this court lacks subject matter jurisdiction over the claim asserted by plaintiff. *See* Document 30 of the Record at ¶¶ 6 and 7. Accordingly, as defendant summarizes, "[t]he principal legal issue is whether the admitted factual background of the plaintiff's claim constitutes negligence on the part of Conrail which has resulted in injury to the plaintiff or whether it constitutes merely a minor labor dispute." Document 34 of the Record, Conrail Pre-Trial Memorandum at 7.

The Railway Act subjects disputes arising under collective bargaining agreements in the railroad industry to compulsory arbitration. *See Lancaster v. Norfolk and W. Ry. Co.,* 773 F.2d 807, 812 (7th Cir.1985), *cert. filed,* 54 U.S.L.W. 3717 (1986). The stated purpose of the Railway Act is to provide for the prompt and orderly settlement of all disputes growing out of grievances or, out of the interpretation, or application of grievances covering rates of pay, rules, or working conditions. *See* 45 U.S.C. § 151a(5). This purpose was amplified by the United States Supreme Court:

> The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions. (citation omitted). Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts.

*Union Pac. R.R. Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

On the other hand, the FELA provides, "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." *See Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309, 1313 (9th Cir.1986) (citing 45 U.S.C. § 51). In *Urie v. Thompson*, 337 U.S. 163, 181, 69 S.Ct. 1018, 1030, 93 L.Ed. 1282 (1949), the United States Supreme Court acknowledged the all encompassing provisions of the FELA:

> The language is as broad as could be framed.... On its face, every injury suffered by any employee while employed by reason of the carrier's negligence was made compensable. The wording was not restrictive as to the employees covered; the cause of injury, except that it must constitute negligence attributable to the carrier; or the particular kind of injury resulting.

■ In *Yawn v. S. Ry. Co.*, 591 F.2d 312 (5th Cir.), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979), the claimants alleged that the railroad was negligent in failing to provide them with adequate help and adequate time with which to do their jobs thereby causing claimants to suffer, *inter alia*, physical and mental anguish. The railroad maintained that the claims were "minor" disputes subject to the Railway Act's grievance and arbitration procedures. The Fifth Circuit Court of Appeals disagreed stating, "[a]s a corollary to this duty to maintain safe working conditions, the carrier is required to provide its employee with sufficient help in the performance of the work assigned to him." *Id.* at 315 (citations omitted). The court recognized a number of cases concerning employees who suffered some demonstrable physical injury as a result of insufficient help. *Id.* This court agrees with the rationale in *Yawn* that if an employee can establish physical injury caused by carrier negligence, he is entitled to damages under the FELA. *Id.* at 317. As the court in *Yawn* stated:

Any allegation of railroad negligence in failing to provide an employee with sufficient help could be characterized as a dispute over working conditions. However, the fact that an employee suffers injury because of unsafe working conditions does not preclude access to the FELA. Thus, if an employee engaged in repairing tracks is injured because he was furnished insufficient help to perform the task, the railroad will not be heard to argue that the employees' FELA suit is removable because it concerns a dispute over working conditions. (citation omitted).

*Id.* While the arbitration procedures set forth in the Railway Act are designed to settle "minor" disputes that arise from day to day matters in the railroad industry, they are not intended to serve the function of resolving personal injury claims. *Id.* The role of the arbitrators was identified in *Lancaster v. Norfolk and W. Ry. Co.*, *supra*, as follows: "[a]rbitrators have no particular competence to determine causality and assess damages in cases of serious personal injury, whether physical or mental." *Id.* at 816.

■ Cases where an employee is claiming some residual effect from his discharge from employment are distinguishable from this case where there is no claim of wrongful discharge. For example, in *Magnuson v. Burlington N., Inc.*, 576 F.2d 1367 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978), plaintiff was discharged from his employment after the railroad determined that he was responsible for a railroad accident. The court noted, "[i]f the basic injury was his wrongful discharge, the complaint involves a minor dispute which must be arbitrated following the procedures of the RLA. All of the damages which he claims to have suffered flowed from his wrongful dismissal from his employment." *Id.* at 1369. Thus, the court went on to state, "[a]rtful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge." *Id.* *See also Scales v. Nat'l R.R. Passenger Corp.*, 634 F.Supp. 1 (E.D. Pa. 1984) (complaint alluding to terms and conditions of employment subject to the RLA;

court will not permit plaintiff's pleading to conceal essential nature of his claim, which is a labor dispute rather than a tort action); *Mayon v. S. Pac. Transp. Co.*, 632 F.Supp. 944 (E.D.Tex.), *aff'd*, 805 F.2d 1250 (5th Cir.1986) (plaintiff's complaint inseparable from grievance machinery applicable; threat of interference with the judgment of the RLA is great as adjudication of claim would necessarily require interpretation of collective bargaining agreement); *Evans v. Missouri Pac. R.R. Co.*, 618 F.Supp. 930 (E.D.Mo.1985) (slander action as a result of alleged remarks occurring during a proceeding to decide if plaintiff should obtain a work position subject to the Railway Act). In discussing the interrelationship between the Railway Act and the FELA, the court in *Lancaster v. Norfolk and W. Ry. Co., supra*, acknowledged that the FELA creates liability only for negligence and most of the tort cases brought by railway workers in which a defense based on the Railway Act is raised have charged wrongful discharge or intentional infliction of emotional distress, which are both intentional torts. *Id.* at 812.

As recognized in *Yawn*, defendant's position would require that virtually all claims resulting from insufficient help or improper working conditions be subject to the Railway Act to the exclusion of the FELA. It is inconceivable, given the liberal and humanitarian purpose and broad provisions of the FELA, that a railroad employee could never maintain an action based on improper working conditions under the FELA, but instead must proceed under the arbitration provisions of the Railway Act.

To the extent the decision of *Simons v. Consolidated Rail Corp.*, No. 85–1747–S, slip op. (D.Mass. October 1, 1986)[1] is to the contrary, this court declines to follow it. In *Simons*, however, the court applied a breach of contract rationale in analyzing the facts of the case. The plaintiff claimed that he was ordered to fly to a Conrail training program notwithstanding his supervisor's awareness of his "deathly fear of flying." According to the analysis, if plaintiff refused to fly and was discharged,

he would have no FELA cause of action and, even if he was terminated and suffered stress leading to heart disease, his action would still be for a violation of the contract under the RLA. The court concluded, "[i]f a wrongful discharge claim can only be brought under the RLA, a claim resulting from a threat or threats of wrongful discharge should not produce a different result." *Id.* at 7. In addition to not being persuaded by this approach, this court believes it is predicated upon a wrongful discharge assumption.

The court finds further support for its decision in the Ninth Circuit Court of Appeals' decision in *Buell v. Atchison, Topeka and Santa Fe Ry. Co.*, 771 F.2d 1320 (9th Cir.1985), *cert. granted*, ⎯ U.S. ⎯, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986). In *Buell*, plaintiff alleged that an emotional breakdown he suffered was caused by harassment, threats and intimidation by his supervisor and co-workers which the Railroad negligently failed to stop even after notice. The court reasoned:

> The plaintiff in this case, however, is not seeking additional relief under state law for a matter cognizable under the RLA and within the exclusive jurisdiction of the Adjustment Board. Buell is suing under a federal statute, i.e., the FELA, for injuries he suffered at the workplace. His complaint does not constitute a 'minor dispute' within the exclusive jurisdiction of the Board because it is neither related to the collective bargaining agreement nor arguably governed by its provisions. Adjudication of the complaint will not involve the district court in the interpretation or application of the collective bargaining agreement anymore than would any other suit under the FELA. The question before us is therefore not whether a state law claim is preempted by federal law but whether there is any reason under federal law to limit a railroad employee's right to relief under the FELA for emotional injury.

*Id.* at 1323–24.

In *Eierman v. Consol. Rail Corp.*, 637 F.Supp. 225 (E.D.Pa.1984) the court, on the

---

**1.** Defendant indicates that *Simons* is on appeal to the First Circuit Court of Appeals.

basis of the record before it, found that plaintiff's claim was not cognizable only under the Railway Act when the complaint stated a claim that could be resolved, at least in large part, without reference to the collective bargaining agreement. In support, the court noted that the potential for interference with the federally mandated scheme for resolving railroad labor disputes was minimal and that no provision of the RLA or the collective bargaining agreement was cited protecting against the alleged outrageous conduct involved in the case. *Id.* at 226.

Similarly, in the instant matter, resolution of plaintiff's claim does not require interpretation of the collective bargaining agreement. Instead, plaintiff claims that the excessive hours he worked violated federal statutory law. Further, plaintiff claims that the defendant was negligent in creating the situation requiring him to work excessive hours which was a substantial factor in the myocardial infarction he sustained.

Defendant avers that plaintiff's claims require interpretation of the collective bargaining agreement. *See* Document 44 of the Record at 4–5. While the broad areas of hours of employment and crew "consists" are part of that agreement, defendant ignores the fact that plaintiff's claim is premised on the common law duty, recognized under the FELA, to maintain safe working conditions, including providing an employee with sufficient help to perform assigned tasks. *See Yawn v. S. Ry. Co., supra.* Additionally, plaintiff premises his claim on violations of the Hours of Service Act, 45 U.S.C. § 61 *et seq.*

In *Jopek v. New York Cent. R.R. Co.,* 353 F.2d 778 (3d Cir.1965), our Court of Appeals affirmed a judgment in favor of a plaintiff who predicated her FELA claim on the "[f]ailure to provide a safe place to work (general negligence) and violation of the Hours of Service Act, 45 U.S.C. § 61 *et seq.* (negligence *per se*)." *Id.* at 780. Generally, employees have been permitted to litigate federal law claims relating to discharges or terms of employment, and thus to circumvent the RLA's grievance and arbitral procedures, "[o]nly when their claims are *'premised on a specific federal statutory section,'* (citation omitted) and are *designed to vindicate 'substantial rights intended by Congress to be judicially enforced.'*" (citation omitted). *Lewy v. S. Pac. Transp. Co.,* 799 F.2d 1281, 1291 (9th Cir.1986).

As the *Lewy* court noted, railroad employees have not been permitted to litigate federal claims based on employment conditions in cases where they allege only a violation of the policy supporting a federal statute, as opposed to a violation of the express terms of the statute itself. *Id.* at 1292. In this case, defendant asserts that a violation of the Hours of Service Act does not give rise to a private cause of action. *See* Document 34 of the Record at 7–8. Indeed, in *United Transp. Union v. Lewis,* 699 F.2d 1109 (11th Cir.1983), the court recognized that inasmuch as no mechanism for private enforcement of § 62 exists, no private right of action could be implied based on the clear language of the Act. *Id.* at 1112–1113. Thus, while violations of the Hours of Service of Employees Act may form the basis for a FELA claim, *see Jopek v. New York Cent. R.R. Co., supra,* no independent private right of action under the Act exists. *See also Pratico v. Portland Terminal Co.,* 783 F.2d 255 (1st Cir.1985) (violation of OSHA regulations may serve as standards of care under doctrine of negligence *per se* in a FELA case).

The Fifth Circuit Court of Appeals recently held that a FELA provision which did not explicitly establish a cause of action for railroad employees, nonetheless provided federal statutory authority sufficient to overcome the preclusive effect of the Railway Act. *Gonzalez v. S. Pac. Transp. Co.,* 773 F.2d 637 (5th Cir.1985). It appears, that in light of the above cases, the Hours of Service Act provides sufficient statutory authority for finding that the Railway Act does not encompass the instant claim.

Moreover, this court agrees with the reasoning in *Yawn* that the mechanisms set up by the Railway Act would prove ineffective in resolving personal injury claims. In this case, the cause of plaintiff's myocardi-

al infarction is disputed. Plaintiff represents that his medical experts will testify that plaintiff's work schedule was a significant producing factor in exacerbating underlying coronary artery disease and contributing to his myocardial infarction. *See* Document 45 of the Record at 9, 30–31. Submission of these types of issues under the Railway Act was not contemplated by Congress.

"Congress enacted the RLA in 1926 in order to promote stability in the railroad industry and to provide for prompt and efficient resolution of labor-management disputes arising out of railroad collective bargaining agreements." *Lewy v. S. Pac. Transp. Co., supra,* at 1289. Neither purpose is met by requiring submission of this matter to the arbitration procedures set out in the Railway Act.

Likewise, in this case, arbitration would defeat the liberal construction afforded the FELA. *Fox v. Consol. Rail Corp.,* 739 F.2d 929, 931 (3d Cir.1984), *cert. denied,* 469 U.S. 1190, 105 S.Ct. 962, 83 L.Ed.2d 968 (1985). The FELA "[i]s a statutory mechanism designed to give injured railroad employees a federal right to sue 'in commerce' railroad employers for what would otherwise be a common law action for negligently inflicted tortious damages." *Id.* Clearly, this purpose would be undercut were this court to hold that plaintiff's allegations failed to assert a cognizable FELA claim.

Assuming *arguendo* that the court were to find it lacked subject matter jurisdiction over that portion of plaintiff's claim relying on improper working conditions involving excessive working hours, plaintiff asserts a second claim alleging that defendant negligently conducted a medical examination of plaintiff which led, in part, to plaintiff's myocardial infarction. That is, plaintiff intends to prove that defendant's failure to perform adequate testing significantly increased plaintiff's risk of sustaining a myocardial infarction. *See Fletcher v. Union Pac. R.R. Co.,* 621 F.2d 902 (8th Cir.1980),

*cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981).

While the collective bargaining agreement appears to provide for such examinations, *see* Document 33 of the Record, Exhibit 1 at 102–Rule 95, it is inconceivable that plaintiff's claim would fall within the purview of the Railway Act. The collective bargaining agreement generally refers to physical examinations of employees. Plaintiff's claim, however, is not based on the fact that defendant failed to perform an examination as required by the agreement. Instead, plaintiff relies on the common law axiom, cognizable in a FELA action, that once an employer undertakes to give physical examinations, it is liable if it performs such undertaking negligently. *See Fletcher v. Union Pac. R.R. Co., supra,* at 909. For the reasons already set forth, the court finds that submission of this claim to arbitration under the RLA is not mandated.

Defendant, relying on the case of *Lancaster v. Norfolk and W. Ry. Co., supra,* apparently maintains that because plaintiff's claim is not based on any physical contact or threat of physical contact, an injury pursuant to the FELA did not result. In *Randall v. Reading Co.,* 344 F.Supp. 879 (M.D.Pa.1972) (Muir, D.J.), the court rejected defendant's contention that plaintiff's recovery required evidence that plaintiff suffered "bodily injury" as a result of an accident within the meaning of the FELA. The uncontroverted fact that plaintiff suffered a heart attack while on the job was sufficient given the broad definition of injury in the FELA.[2]

The court in *Randall* noted, and I agree, that defendant's rewording of the statute would depart radically from the language of the FELA and erect what amounts to an impact rule for recovery. *Id.* at 882. *Accord Yawn v. S. R.R. Co., supra.* Similarly, in *Buell v. Atchison, Topeka and Santa Fe Ry. Co.,* the court, relying in part on *Randall,* affirmed the FELA's broad concept of injury encompassing all reasonably

**2.** Defendant argues that plaintiff "bid" for the job and should have been aware that it entailed twelve (12) hour work shifts. *See* Document 44 of the Record at 5. The implication is that

plaintiff somehow "assumed the risk." This contention appears to be untenable under the FELA. *See* 45 U.S.C. §§ 53 and 54.

foreseeable injuries which result from a railroad's failure to exercise due care with respect to its employees. *Id.* at 1322. *But see Lancaster v. Norfolk and W. Ry. Co., supra; Moody v. Maine Cent. R.R. Co.,* 620 F.Supp. 1472 (D.Maine 1985).[3] Similarly, in *Urie v. Thompson, supra,* the United States Supreme Court stated, "[t]o read into this all-inclusive wording a restriction as to the ... particular sorts of harm inflicted, would be contradictory to the wording, the remedial and humanitarian purpose and the constant and established course of liberal construction of the Act followed by this Court." *Id.* 337 U.S. at 181–82, 69 S.Ct. at 1030 (footnote omitted). Relying on this principle of statutory construction, the court held:

> In our view, when the employer's negligence impairs or destroys an employee's health by requiring him to work under conditions likely to bring about such harmful consequences, the injury to the employee is just as great when it follows, often inevitably, from a carrier's negligent course pursued over an extended period of time as when it comes with the suddenness of lightning.

*Id.* at 186–87, 69 S.Ct. at 1033.

In sum, the court finds that defendant's alleged misconduct is not the sort of conduct that Congress, if it had thought about the matter, would have wanted to channel through the grievance machinery set up by the RLA. *See Lewy v. S. Pac. Transp. Co., supra.* Instead, the conduct complained of here is the type which Congress would have wanted to leave, concurrently or exclusively, to state or federal tort remedies. *Id.* Similarly, plaintiff alleges a sufficient injury within the meaning of the FELA to warrant submission of the issue to the jury.

An appropriate Order will enter.

---

**3.** According to defendant, *Moody* is awaiting decision in the First Circuit Court of Appeals.