**Angie M. MOODY, etc.,**
Plaintiff, Appellant,

v.

**BOSTON AND MAINE CORPORATION,**
Defendant, Appellee.

No. 90–1552.

United States Court of Appeals,
First Circuit.

Heard Oct. 4, 1990.

Decided Dec. 7, 1990.

James F. Freeley, Jr., with whom Freeley & Freeley, Boston, Mass., was on brief, for plaintiff, appellant.

Charlene F. Clinton, Washington, D.C., with whom James Q. Shirley and Sheehan, Phinney, Bass & Green, Professional Ass'n, Manchester, N.H., were on brief, for defendant, appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and ATKINS,* Senior District Judge.

TORRUELLA, Circuit Judge.

This case is before us on appeal from the district court's grant of summary judgment in favor of defendant/appellee Boston and Maine Corporation. Plaintiff/appellant Angie M. Moody, personal representative of the Estate of Leon H. Moody, brought this action against Boston and Maine Corporation under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.*, for the alleged wrongful death of her husband, Leon Moody. The district court found that Mrs. Moody had failed to establish an essential element in her case and that therefore summary judgment was appropriate. We affirm.

In determining whether summary judgment is appropriate, we examine the record in the light most favorable to the nonmoving party and indulge in all inferences in that party's favor. *Petitti v. New England T. & T. Co.*, 909 F.2d 28, 31 (1st Cir.1990). Mindful of this standard, we here set forth the facts in the light most favorable to the plaintiff.

Leon Moody died of a heart attack at the age of 52, on July 3, 1984, at his family campsite in Maine. At the time of his death he had been setting off "sparkler" fireworks for his grandchildren. The hospital emergency room records state the cause of death as cardiac arrest or cardiopulmonary arrest. The records also state that Mr. Moody had a history of hypertension and that he had been a smoker.

Mr. Moody had been employed by Boston and Maine Corporation for a number of years, most recently as a conductor. During June 1984, the month before Mr. Moody's death, he had begun to work an increased number of hours because of a short-term personnel shortage at Boston and Maine. Time records kept by a coworker of Mr. Moody, Kendrick W. Holbrook, show that on ten occasions in June Mr. Moody was kept on duty for more than 12 hours at a time.[1] The last of these occasions was on June 21. Mr. Holbrook stated in his deposition that his time book accurately reflected the number of hours that Mr. Moody worked. Neither the time sheets maintained by Mr. Moody for his own personal use, however, nor the official time sheets that Mr. Moody signed and submitted to Boston and Maine, show that he was on duty in excess of 12 hours during any shift in June.

Also in June, Mr. Moody's normal starting time began to fluctuate; instead of working his usual night shift he was occasionally put on the day shift. On perhaps six occasions Mr. Moody was called at home during his off hours and informed of a change in his shift. These calls, some of which were noted on Mr. Moody's personal time records, disturbed his rest. Mr. Moody requested that Boston and Maine pay him overtime for the disrupted sleep. Boston and Maine's time records show that Mr. Moody made a claim for 5 hours, 47 minutes overtime for June 19 and June 20, 1984. This claim was denied.

Mr. Moody's last day of work was June 29. He had four days off from work before suffering the heart attack.

Mrs. Moody based her case on the theory that her husband's death was employment-related because it was caused by the long hours he had worked and the interruptions to his rest during his off-duty hours. She relies on the statement of a medical expert to the effect that Mr. Moody's heart condition was causally related to the severe stress of his work.[2] Therefore, she claims

---

* Of the Southern District of Florida, sitting by designation.

1. Holbrook's time book shows that Mr. Moody worked on June 5, 12 hours 35 minutes; on June 6, 12 hours 20 minutes; on June 10, 14 hours 10 minutes; on June 12, 13 hours 15 minutes; on June 13, 12 hours 15 minutes; on June 17, 13 hours 55 minutes; on June 18, 12 hours 30 minutes; on June 19, 12 hours 30 minutes; on June 20, 12 hours 20 minutes; and on June 21, 12 hours 45 minutes.

2. The medical expert's statement is qualified as follows: "When we analyze the issue of causal relationship in this case, we are not seeking to establish the ultimate cause of his death, nor can we say that the work in and of itself was causative in the arteriosclerosis process."

that she is entitled to recovery under the FELA, which grants relief if the railroad's negligence contributed to the injury for which damages are sought. *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). The district court found that Mrs. Moody had failed to offer any evidence of foreseeability, which is an essential element in a negligence action, even one brought under the FELA. *Harrison v. Missouri Pac. R.R.*, 372 U.S. 248, 249, 83 S.Ct. 690, 691, 9 L.Ed.2d 711 (1963). For this reason summary judgment was entered for the defendant.

On appeal, Mrs. Moody presents two grounds for reversal of the district court's judgment. First, she argues that there was sufficient evidence of foreseeability for her general negligence claim to survive. Second, she argues that she has made out a claim for negligence per se based on Boston and Maine's alleged violation of the Hours of Service Act, 45 U.S.C. §§ 61–66.[3] We will examine each argument in turn.

## GENERAL NEGLIGENCE

■ The FELA provides that railroad employers are liable for injuries to their employees "resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier." 45 U.S.C. § 51. The statute is broadly remedial and has been accorded by the courts a " 'standard of liberal construction in order to accomplish' Congress' objects." *Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 6 (1st Cir.1987) (quoting *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 1030, 93 L.Ed. 1282 (1949)). Although the standard of liability under the FELA is low, it is not one of absolute liability. Plaintiffs must prove the traditional common law elements of negligence, including foreseeability, duty, breach and causation. *Robert*, 832 F.2d at 6. Mrs. Moody, therefore, is required to show that Boston and Maine could have foreseen that the allegedly stressful work conditions would result in injury to Mr. Moody. This foreseeability of

risk would create a duty on the part of Boston and Maine to do what it could to prevent the injury from occurring.

■ The district court found, and we agree, that Mrs. Moody failed to make a showing of foreseeability. The record does not show that Mr. Moody ever informed Boston and Maine of his deteriorating physical condition or complained about the interruptions to his rest and increased job stress. His only action was to submit a claim for additional wages based on the disturbances. To borrow from our holding in a similar and controlling case: "Suffice it to say that in this case [Mrs. Moody] has failed to establish that [Boston and Maine] could or should reasonably have foreseen that [Mr. Moody] would suffer a heart attack from stress of which [Boston and Maine] was never informed." *Robert*, 832 F.2d at 7.

■ Mrs. Moody's argument that Boston and Maine was negligent in failing to examine her husband periodically for medical problems fares no better. There is no requirement under the FELA that a railroad perform periodic physical examinations on its employees. *Fletcher v. Union Pac. R. Co.*, 621 F.2d 902, 909 (8th Cir.1980); *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981). An employer is only liable if, having undertaken to give physical examinations, it performs the examinations negligently. *See id.; see also Welby v. Consolidated Rail Corp.*, 671 F.Supp. 1015, 1020 (M.D.Pa.1987).

## NEGLIGENCE PER SE

In an effort to avoid the hurdle of foreseeability, Mrs. Moody alleges that Boston and Maine violated the Hours of Service Act, 46 U.S.C. §§ 61–66 ("Act"), by forcing Mr. Moody to work in excess of a twelve hour shift with inadequate intervening rest periods. As we are reviewing this case under a summary judgment standard, we take as true her allegation that the Hours of Service Act was indeed violated. This

---

**3.** Although the claim of negligence per se was not separately pleaded in the complaint, and the district court did not reach the issue in granting summary judgment, we will consider it here, as it was thoroughly briefed and argued by both parties.

violation, according to Mrs. Moody, constitutes negligence per se.

■ Under a traditional negligence per se analysis, proof of defendant's violation of a safety statute designed to protect the party who was injured against the type of injury which occurred, relieves the plaintiff from pleading the negligence elements of foreseeability, duty and breach. *Pratico v. Portland Terminal Co.*, 783 F.2d 255, 262 (1st Cir.1985); *Restatement (Second) of Torts* § 286 (1965). The Supreme Court has stated: "Sometimes the violation [of a safety statute] is described as 'negligence per se'; but we have made clear ... that that term is a confusing label for what is simply a violation of an absolute duty. Once the violation is established, only causal relation is in issue." *Carter v. Atlanta & St. A.B.R. Co.*, 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949) (citations omitted).

If the traditional standard for negligence per se applied, Mrs. Moody could not prevail because the Hours of Service Act was not designed to protect against the type of injury suffered here.[4] The Act was intended to protect the public and railroad employees from the danger of accidents caused by overfatigued employees. *Chicago & A.R. Co. v. United States*, 247 U.S. 197, 199, 38 S.Ct. 442, 443, 62 L.Ed. 1066 (1918); *Atchison, T. & S.F. Ry. Co. v. United States*, 244 U.S. 336, 37 S.Ct. 635, 61 L.Ed. 1175 (1917). It has no application to injuries suffered away from work. Cases that have allowed recovery for injuries that occurred during violations of the Hours of Service Act have uniformly involved injuries that took place on the job. *See, e.g., Jopek v. New York Central R.R.*, 353 F.2d 778, 780 (3d Cir.1965); *Welby*, 671 F.Supp. at 1020.

The limitation on recovery in traditional negligence per se cases, however, does not apply where the action is pursuant to the FELA. *Kernan v. American Dredging Co.*, 355 U.S. 426, 432–33, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958). "[T]he basis of liability is a violation of statutory duty without regard to whether the injury flowing from the violation was the injury the statute sought to guard against. It must therefore be concluded that the nature of the Acts violated is not a controlling consideration; the basis of liability is the FELA." *Id.* at 438, 78 S.Ct. at 401; *see also Pratico*, 783 F.2d at 263. The purpose of the Hours of Service Act is thus not an obstacle to Mrs. Moody's recovery.

But that bar is not the only one she must overcome. Although the elements of foreseeability, duty and breach are satisfied by a showing that Boston and Maine violated the Hours of Service Act, the element of causation remains. *Carter*, 338 U.S. at 434, 70 S.Ct. at 229; *Moody v. Maine Central R. Co.*, 823 F.2d 693, 695 (1st Cir.1987). In a case applying the Act, the Supreme Court stated: "It requires no reasoning to demonstrate that the general rule is that where negligence is charged, to justify a recovery it must be shown that the alleged negligence was the proximate cause of the damage." *St. L. & Iron Mtn. Ry. v. McWhirter*, 229 U.S. 265, 280, 33 S.Ct. 858, 864, 57 L.Ed. 1179 (1913). The Court continued:

[A]lthough the act carefully provides punishment for a violation of its provisions, nowhere does it intimate that there was a purpose to subject the carrier who allowed its employees to work beyond the statutory time to liability for all accidents happening during that period with-

---

**4.** The Hours of Service Act provides that:

It shall be unlawful for any common carrier, its officers or agents, subject to this chapter—(1) to require or permit an employee, in case such employee shall have been continuously on duty for fourteen hours, to continue on duty or to go on duty until he has had at least ten consecutive hours off duty, except that, effective upon the expiration of the two-year period beginning on the effective date of this paragraph, such fourteen-hour duty period shall be reduced to twelve hours;

(2) to require or permit an employee to continue on duty or to go on duty when he has not had at least eight consecutive hours off duty during the preceding twenty-four hours. 45 U.S.C. § 62(a)(1), (2). The Act became effective on December 26, 1970, so the twelve hour maximum duty shift was in effect at the time of the incidents involved here. The Act also limits the definition of "employee" to "an individual actually engaged in or connected with the movement of any train, including hostlers." 45 U.S.C. § 61(b)(2).

out reference to whether the accident was attributable to the act of working over time.

*Id.* "The test for minimally adequate proof of causation is 'whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.'" *Moody*, 823 F.2d at 695 (quoting *Rogers*, 352 U.S. at 506, 77 S.Ct. at 448).

■ The causation element is simply absent from the record. Twelve days elapsed between the last of the alleged violations of the Act and the death of Mr. Moody. Mrs. Moody's own expert, when addressing causation, did so in only the vaguest terms. The expert referred to "the severe stress of work" as a contributing cause of Mr. Moody's heart attack, but did not refer specifically to the effects of working over twelve hours. Clearly, "beyond the proof of working over time there [must be] proof connecting the accident with the working over time." *McWhirter*, 229 U.S. at 280, 33 S.Ct. at 864. As in the similar *Moody* case, "plaintiff alleges a condition ... arising from a series of work-related pressures, and not from any traumatic 'accident' or event that jurors, as a matter of everyday experience, could causally connect with the injury alleged." *Moody*, 823 F.2d at 696.

We do not doubt that job-related stress is a genuine problem of modern-day life. We agree, however, with the conclusion of the District Court for the Eastern District of Pennsylvania, which stated: "Job-related stress is simply not the type of problem intended to be dealt with by the FELA." *Kraus v. Consolidated Rail Corp.*, 723 F.Supp. 1073, 1090 (E.D.Pa.1989), *appeal dismissed*, 899 F.2d 1360 (3d Cir.1990). Mrs. Moody has failed to carry her burden as to essential elements of her case; summary judgment was therefore appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986).

The judgment of the district court is *affirmed*.