**Ann DOUGHERTY, Plaintiff,**

v.

**BLUE CROSS BLUE SHIELD
OF MASSACHUSETTS,
INC., Defendant.**

**Civil Action No. 94–12499–MLW.**

United States District Court,
D. Massachusetts.

Dec. 16, 1996.

Cheri L. Crow, Reading, MA, for Plaintiff.

Joseph D. Halpern, Blue Cross Blue Shield of Mass. Law Dept., Boston, MA, for Defendant.

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, Ann Dougherty, alleges that the defendant, Blue Cross Blue Shield of

Massachusetts, Inc., discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Massachusetts anti-discrimination law, Mass. Gen. L. ch. 151B, § 4. These claims stem from the dismissal of Ms. Dougherty by the defendant in February of 1994.

Blue Cross Blue Shield of Massachusetts, Inc., now moves for summary judgment contending first, that the plaintiff cannot establish a prima facie case of age discrimination and, second, that the plaintiff cannot produce evidence sufficient to prove discriminatory motive. Needless to say, Ann Dougherty opposes this motion.[1] With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c).

## II. THE FACTS [2]

Ann Dougherty began working for Bay State Health Care (hereinafter "BSHC") on June 22, 1990, as a purchasing agent. (# 1 ¶ 6; # 28 ¶ 2; Supplemental Affidavit of Joseph Churchman # 32 ¶ 2) In October of 1992, Blue Cross Blue Shield of Massachusetts, Inc. (hereinafter "BCBS"), a Massachusetts corporation with a principal place of business at 100 Summer Street in Boston, bought out BSHC, and Ms. Dougherty became an employee of BCBS.[3] (# 1 ¶¶ 3, 4, 8; Answer # 3 ¶¶ 3, 4, 8; Defendant's Memorandum in Support of Motion for Summary Judgment # 5) The plaintiff worked in the corporate cost purchasing center of the pur-

chasing department of BCBS. (# 28 ¶ 14) According to Ms. Dougherty, she was never told by BCBS that she was no longer a purchasing agent, and, in her view, she was performing the functions of an assistant purchasing agent at the time of her termination. (# 28 ¶¶ 13, 15, 18)

In May of 1993 Joseph S. Churchman became the Director of the purchasing department of BOBS. (# 1 ¶ 10; # 3 ¶ 10; # 28 ¶ 6) Mr. Churchman asserts that the plaintiff was not an assistant purchasing agent, and, because the job categories of BOBS and BSHC did not correspond, Ms. Dougherty was "reclassified ... as a 'Specialist II' ", that being an internal job classification of BOBS which corresponds to senior buyer, a level M position. (Defendant's Objection and Reply to Opposition to Motion for Summary Judgment # 31; # 32 ¶ 2) An employee action form shows that upon reclassification Ms. Dougherty's functional title was changed from purchasing agent to Specialist II. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment # 27; Plaintiff's First Request for Production of Documents # 30 Exh. 5(b)) Although the plaintiff began working for BOBS in October of 1992,[4] her reclassification was not effective until January 1, 1994, and was not approved until January 21, 1994, approximately two weeks before her dismissal.[5] (# 27; # 30 Exh. 5(b))

During the second half of 1993, BOBS contends that a reorganization of the purchasing department was begun in order to effect a budget reduction. (# 5; Blue Cross

---

1. Blue Cross Blue Shield of Massachusetts, Inc. objects to the Plaintiff's Opposition to Defendant's Motion for Summary Judgment because it was not filed in accordance with the time frame set at the scheduling conference which allowed the plaintiff until January 10, 1996 to file her opposition. (Defendant's Objection and Reply to Opposition to Motion for Summary Judgment # 31; *See also* Joint Statement for Scheduling Conference # 18) Plaintiff's Opposition to Defendant's Motion for Summary Judgment was filed on January 22, 1996. (Plaintiff's Opposition to Defendant's Motion for Summary Judgment # 26) The defendant urges the court not to consider the opposition or the accompanying affidavits because they were filed late. In view of the decision reached herein, the objection to my considering plaintiff's opposition papers is OVERRULED.

2. Neither the defendant nor the plaintiff filed a local rule 56.1 statement of undisputed facts.

3. The date on which Ms. Dougherty became an employee of BCBS appears to be in dispute. (# 1 ¶ 8; # 3 ¶ 8; # 9 ¶ 3; # 27; But see Plaintiff's Response to Blue Cross Blue Shield's First Set of Interrogatories, # 29 Exh. 7 (stating that plaintiff began working for BCBS in May of 1993))

4. *See supra* note 3.

5. BCBS claims that Mr. Churchman had nothing to do with the timing of Ms. Dougherty's change in title. (# 32 ¶ 2)

and Blue Shield's Response to Plaintiff's Interrogatories to Defendant # 25, Ans. No. 8) Mr. Churchman states that before the department budget was reduced, two new employees were hired to upgrade the expertise level of the purchasing staff, Ms. Kimberlee Nauges in late 1993,[6] and Ms. Elizabeth Williams in January of 1994. (# 1 ¶¶ 12, 13; # 5; Affidavit of Kimberlee Nauges # 7; # 9 ¶ 2)

According to Ms. Dougherty, it was the policy of BCBS to post job openings. That purported policy notwithstanding, the plaintiff contends that she was never informed of, nor interviewed for, the positions that were ultimately filled by Ms. Nauges and Ms. Williams. (# 28 ¶¶ 10, 11) Moreover, Ms. Dougherty asserts that she had both the knowledge and experience necessary to perform the jobs for which these women were hired, and that in fact she taught Ms. Nauges and Ms. Williams their jobs from the beginning of their employment until her dismissal. (# 28 18, 22)

Both Ms. Nauges and Ms. Williams were hired as assistant purchasing agents, level "L" positions.[7] (# 5) From BOBS's perspective, both Ms. Nauges and Ms. Williams had special qualifications and skills. (# 9 ¶ 5) Ms. Nauges did not have any purchasing experience, but did have a bachelor of science degree in business administration and was a recent law school graduate who would provide "expertise with Requests for Proposals" and help in "developing legally enforceable contracts." (# 1 ¶ 12; # 9 ¶ 5 and Exh. A) Ms. Williams was also a college graduate with five years purchasing experience coupled with special experience in "minority business enterprise purchasing." (# 9 ¶ 5)

It is alleged that Ms. Nauges was in her mid-twenties when hired by BCBS at a starting salary of $36,000.00 followed by an 11 percent raise shortly thereafter. (# 1 ¶ 12; # 30 Exh. 3(e)) The plaintiff claims that Ms. Williams was twenty-three years old at the time she was hired at a starting salary of $41,000.00, along with a signing bonus. (# 1 ¶ 13; # 30 Exh. 3(c) and 4(1)) At the time of her termination, Ms. Dougherty was fifty-eight years old; although she did not hold a college degree, Ms. Dougherty had fourteen years of purchasing experience and her salary was $42,000.00 per year.[8] (# 1 ¶¶ 5, 9, 18; # 9 Exh. A; # 28 ¶ 21)

According to BCBS, in February of 1994, there were twenty-three employees in the purchasing department, including two senior buyers, Joan Vierbickas and Ann Dougherty. (# 9 ¶¶ 3, 6) In order to reduce the budget Mr. Churchman decided to eliminate one of the two senior buyer positions.[9] (# 9 ¶ 7) At that time both Ms. Vierbickas and Ms. Dougherty were over forty years old, although Mr. Churchman was not aware of either senior buyer's age when he made the decision to terminate Ms. Dougherty. (# 9 ¶ 7)

On February 3, 1994, the plaintiff was dismissed because her job was being eliminated due to a reorganization and reduction in work force; she was not offered another position with BCBS.[10] (# 1 ¶ 20; # 3 ¶ 20) Ms. Dougherty's job performance was satisfactory and she was not terminated for inadequate performance. (# 25 Ans. No. 9) Mr.

---

6. The actual date of hiring is in dispute but the fact that Ms. Nauges was hired is not. (# 1 ¶ 12A # 3 ¶ 12; Affidavit of Kimberlee Nauges # 7 ¶ 2)

7. The plaintiff claims that the employee requisition form states that Ms. Nauges was hired as a buyer. (# 27) That requisition form includes many different titles, but does reflect that she was hired in a level L position. (# 27; # 29 Exh. 4(f)) The employment application does, however, state that Ms. Nauges was hired as a buyer. (# 27; # 29 Exh. 4(g))

8. Because the plaintiff does not specify a particular year in which she made this salary, the defendant does not admit or deny this allegation. (# 3 ¶ 9)

9. In 1994 there were four cost centers with 23 employees. The cost centers were reduced to three and the employees to 21. Of the 21 retained employees 14 are over 40(67%). After Ms. Dougherty's termination another employee was transferred from the purchasing department to another department. That employee was under forty. (# 5)

10. BCBS admits that the plaintiff received a letter which informed her that her termination was based on a reduction in force, but denies that her employment was terminated on February 3, 1994. (# 3 ¶¶ 14, 15)

Churchman asserts that the plaintiff was chosen for dismissal because Ms. Vierbickas had superior skills and experience, as well as a higher performance appraisal. (# 9 ¶ 8)

The plaintiff contends that she was an exemplary employee and that BCBS did not have a legitimate business reason for her termination.[11] (# 1 ¶¶ 19, 20) Ms. Dougherty claims that she was dismissed because of her age and was replaced by Ms. Williams and Ms. Nauges who were under forty, less experienced, and hired shortly before her termination. (# 1 ¶¶ 22, 23) The plaintiff fulfilled the prerequisites to suit by filing a timely claim of age discrimination with the Equal Employment Opportunity Commission and the Massachusetts Commission Against Discrimination. (# 1 ¶ 29)

### III. THE SUMMARY JUDGMENT STANDARD

The summary judgment standard in this Circuit is familiar. When considering the propriety of the entry of summary judgment, the court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the court is to examine the materials presented "in the light most favorable to the nonmoving party and indulge in all inferences in that party's favor." *Moody v. Boston and Maine Corporation,* 921 F.2d 1, 5 (1st Cir. 1990) (citation omitted); *Casas Office Machines Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668, 684 (1st Cir. 1994).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine" the court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.; see also National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir. 1995); *Vasapolli v. Rostoff,* 39 F.3d 27, 32 (1st Cir. 1994). In weighing whether a factual dispute is "material" the court must examine the substantive law of the case, for "only disputes over the facts that might affect the *outcome of the suit under governing law* will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *National Amusements,* 43 F.3d at 735; *Vasapolli,* 39 F.3d at 32.

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. Rather, as stated by the Supreme Court:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also National Amusements,* 43 F.3d at 735.

Moreover,

> [e]ven in cases where elusive concepts such as motive and intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.

*Rivera–Cotto v. Rivera,* 38 F.3d 611, 613 (1st Cir. 1994) quoting, *Medina–Munoz v. R.J. Reynolds Tobacco Company,* 896 F.2d 5, 8 (1st Cir. 1990); *see also Mesnick v. General Electric Company,* 950 F.2d 816, 822 (1st Cir. 1991).

### IV. DISCUSSION
#### A. Age Discrimination in Employment Act

To recap, the plaintiff claims that BCBS fired her because of her age in violation of

---

11. According to BCBS Ms. Dougherty was not an exemplary employee and was never described as such "in any performance evaluation." (# 25 Ans. No. 9)

the Age Discrimination in Employment Act, (hereinafter "ADEA"), 29 U.S.C. § 621 *et seq.*, and that genuine issues of fact exist as to whether BCBS's proffered explanation was pretextual and whether a motivating factor in the discharge was the plaintiff's age. The defendant argues that the "plaintiff can neither establish a prima facie case of age discrimination nor produce evidence sufficient to prove discriminatory motive"; hence, BCBS is entitled to the entry of judgment as a matter of law.

■ In order to make out a prima facie case under the ADEA the plaintiff must prove that she:

'(1) was at least forty years of age, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications.'

*LeBlanc v. Great American Insurance Company,* 6 F.3d 836, 842 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994) (quoting *Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir. 1993)); *see also Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir. 1996).

■ Where the adverse employment action is the result of a reduction in work force, the plaintiff must prove an alternate fourth element, to wit, that " 'the employer did not treat age neutrally or that younger persons were retained in the same position.' " *LeBlanc,* 6 F.3d at 842 (quoting *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1111 (1st Cir. 1989)).

■ Once a prima facie case is established, a presumption arises that the "employer engaged in impermissible age discrimination." *LeBlanc,* 6 F.3d at 842 (citations omitted). At this point, the burden of production shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for the dismissal of the employee. *LeBlanc,* 6 F.3d at 842;

*Mulero–Rodriguez,* 98 F.3d at 673. Thereafter,

once the employer has proffered a legitimate, non-discriminatory reason for its adverse employment decision, the presumption generated by the employee's prima facie case disappears, and the burden falls back upon the employee to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful age discrimination.

*LeBlanc,* 6 F.3d at 842 (citations omitted); *Mulero–Rodriguez,* 98 F.3d at 673.

With the plaintiff bearing this ultimate burden of persuasion, the First Circuit has made plain that "[i]n this circuit, we have always required not only 'minimally sufficient evidence of pretext,' but evidence that overall reasonably supports a finding of discriminatory animus." *LeBlanc,* 6 F.3d at 842–43 (citations omitted)

**1. Has the Plaintiff Established a Prima Facie Case?**

In the present case because the plaintiff was fifty-eight years old at the time of her dismissal from BCBS, she comes within the protections of the ADEA. Ms. Dougherty met the legitimate job expectations of BCBS, and suffered an adverse job action when she was terminated by the defendant in February of 1994. BCBS does not contest these facts, or that the plaintiff has satisfied the initial three prerequisites of the prima facie case. The defendant does argue, however, that the plaintiff cannot satisfy the fourth and final element of the prima facie case.

*a. Was Age Treated Neutrally in the Reduction in Force; i.e., Were Younger Persons Retained in the Same Position Plaintiff Held?* [12]

This appears to be a reduction in work force case, and therefore, the plaintiff must prove that age was not treated neutrally or that younger persons were retained in the same position. *LeBlanc,* 6 F.3d at 842 (citations omitted). *Ms.* Dougherty claims that

---

12. While these are stated in the cases as two separate tests, in the instant case they merge because plaintiff's only asserted basis for claim-ing that age was not treated neutrally in the reduction in force is that younger persons were retained in comparable positions.

age was not treated neutrally in BCBS's decision to retain Ms. Nauges and Ms. Williams and to terminate her.

■ More specifically, the plaintiff contends that she was performing the duties of an assistant purchasing agent, that Ms. Nauges and Ms. Williams are younger persons who were hired as assistant purchasing agents shortly before her dismissal, and that Ms. Nauges and Ms. Williams were retained in the same position upon her dismissal. BCBS contends that Ms. Dougherty was a senior buyer and not an assistant purchasing agent. Titles, however, are not dispositive; "the relevant inquiry concerns the functions which the terminated employee performed in his 'position' and what happened to those functions after the termination." *Shenker v. Lockheed Sanders Inc.,* 919 F.Supp. 55, 60 (D.Mass., 1996).

■ In her pleadings the plaintiff does not set forth the actual duties she performed while working for BCBS, but rather states in conclusory fashion that she "did job duties related to the cost center," and that "based on the position descriptions it is my position that I was performing the duties of an assistant purchasing agent." (# 28 ¶¶ 14, 15) However, in response to BCBS's interrogatories, Ms. Dougherty set out the duties she performed for BCBS from May 1993 to February 1994.[13] Those duties included: cleaning out and disbursing the remaining furniture, equipment and supplies at a closed BCBS facility; BSHC transition; facilitated and improved procedures for ordering supplies; compiled list of items to be on contract; identified and met with vendors in preparation for competitive bid process; coordinated transfer of BSHC receiving person; collected matrix from purchasing personnel in all locations; created wall poster to document procurement dollar savings; created purchasing newsletter; reviewed and updated company policies and procedures handbook; formulated procedure for PC survey; coordinated sale of surplus PCs; identified existing minority vendors; and reviewed and updated RFP. (# 25)

BCBS, in response to the plaintiff's interrogatories, set out in general terms the duties of Ms. Vierbickas, Ms. Nauges, and Ms. Williams. (# 25) Ms. Vierbickas' duties included: bidding and ordering; requests for proposal projects; purchasing card administration; consulting services; and special services. (*Id.*) From October, 1993 to February, 1994, Ms. Nauges was responsible for request for proposal projects; policies and procedures; legal issues; and special projects as needed. (*Id.*) For the remainder of 1994 Ms. Nauges' request for proposal projects as well as policies and procedures responsibilities increased, and she was given additional tasks including supervisory duties and savings tracking and reporting duties. (# 25)[14]

Ms. Williams' responsibilities are entitled strategic procurement and include supplier management of various contracts; minority business partnership venture; request for proposals; disposition and sale of surplus telecommunication equipment; EDI implementation; financial systems integration team; and finance re-engineering.[15] (*Id.*)

BCBS also has submitted the job descriptions for both a senior buyer and an assistant purchasing agent, which, although stated in general terms, reveal that some of the duties of a senior buyer overlap with those of an assistant purchasing agent. (# 6 Exh. A; # 7 Exh. A) According to the defendant, an assistant purchasing agent negotiates and manages long term contractual relations while a senior buyer implements those contracts and has daily contact with vendors. The plaintiff does not allege that she negotiates contracts

13. From all the documents it appears that Ms. Dougherty began working for BCBS in October of 1992. (*See supra* note 3) However, in the Plaintiff's Answer to BCBS's Interrogatories, Ms. Dougherty lists the duties she performed for BCBS from May of 1993 to February 1994. According to the plaintiff she was performing duties for BSHC during 1992 and the first half of 1993.(# 25)

14. Ms. Nauges was promoted to purchasing agent in 1995.(# 25)

15. It appears that Ms. Williams married shortly after becoming an employee of BCBS. Ms. Williams is referenced in BCBS Response to Plaintiff's Interrogatories to Defendant as Ms. Williams, Ms. Williams Noble and Ms. Noble. (# 25)

with vendors, nor does she contradict BCBS's assertion that this particular function is the main distinction between an assistant purchasing agent and a senior buyer.

In her affidavit, Ms. Dougherty states that she worked as a purchasing agent for BSHC, that she was never told that her job title or position had been changed from purchasing agent at any time after she became employed at BCBS, but that, based upon her reading of the job descriptions, in her view she was performing the duties of an assistant purchasing agent. (# 28 ¶¶ 2, 13, 15) Although the plaintiff claims that she was performing the functions of an assistant purchasing agent, she also alleges that she was not notified of or interviewed for the job openings which were ultimately filled by Ms. Nauges and Ms. Williams even though she was qualified to perform those jobs.

Upon her termination, the duties performed by Ms. Dougherty were eliminated, or were reassigned to personnel already doing similar work including Ms. Nauges and Ms. Williams. The purchasing newsletter the plaintiff created is no longer in existence. Ms. Nauges is now responsible for reviewing and updating the company policies and procedures handbook. Ms. Williams now coordinates the sale of surplus telecommunications equipment (PCs). Ms. Dougherty's survey which identified minority vendors had been completed prior to her dismissal but has since been re-done by Ms. Williams. The formulation of procedures for PC survey is now done by many different BCBS employees including Ms. Nauges, Ms. Williams, Ms. Manfredi, and Ms. Mathias. (# 25) The fact that some of Ms. Dougherty's duties were redistributed to employees doing related work does not establish that younger persons were retained in the same position.

■ Taking these facts in the light most favorable to Ms. Dougherty, the plaintiff does not provide evidence sufficient to raise a genuine issue of material fact with respect to which position she held while working for BCBS. The plaintiff has not made an adequate showing to establish, or even raise a genuine issue of material fact as to whether she was performing the duties of an assistant purchasing agent and that younger persons

were retained in the same position. "[R]etention of younger people in other jobs which plaintiff was qualified to perform [is] not sufficient to establish a prima facie case." *LeBlanc*, 6 F.3d at 844 (citing *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir., 1990)).

### b. Has the Plaintiff Produced Evidence that She Was Replaced by a Younger Person with Equivalent Job Qualifications?

■ Ms. Dougherty claims that this is not a reduction in force case and therefore that she could establish a prima facie case by providing sufficient evidence that she "was replaced by a person with roughly equivalent job qualifications." *LeBlanc*, 6 F.3d at 842. However, "[a] discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when work is re-distributed among other existing employees already performing related work." *Kern v. Kollsman*, 885 F.Supp. 335, 343 (D.N.H.1995). The defendant has established that Ms. Dougherty's duties were distributed among existing employees performing related work and that she was not replaced by persons with roughly the same qualifications or otherwise. The plaintiff has proffered nothing to rebut the defendant's evidence.

The plaintiff does not demonstrate that Ms. Nauges or Ms. Williams possessed roughly equivalent job qualifications. Ms. Dougherty does not have a college degree while both Ms. Nauges and Ms. Williams do. Ms. Dougherty has fourteen years of purchasing experience, more than both Ms. Nauges who has none and Ms. Williams who has five years, but both Ms. Nauges and Ms. Williams have special qualifications. Ms. Nauges has a law school degree, and Ms. Williams has special experience in minority business purchasing. Even assuming Ms. Dougherty was performing the functions of an assistant purchasing agent, she has not shown that she was replaced by persons with roughly equivalent job qualifications.

Based upon all the evidence taken in the light most favorable to the plaintiff, BOBS

has established that no younger persons were retained in comparable positions, and, thus, that age was treated neutrally in making the employment decision. BOBS has also shown that Ms. Dougherty was not replaced by a person with roughly equivalent job qualifications. The plaintiff quite simply has not presented evidence which would raise a genuine issue of material fact with respect to the fourth element of her prima facie case. However, given that " 'the burden of making out a prima facie case is "not onerous" ' ", the court shall continue with the analysis. *LeBlanc*, 6 F.3d at 844 (citations omitted); *see also Byrd v. Ronayne*, 61 F.3d 1026, 1031 (1st Cir. 1995).

### 2. The Defendant's Asserted Reason for the Termination

Where a plaintiff has established a prima facie case of age discrimination under, the ADEA, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's dismissal. In this instance, BOBS asserts that the termination of Ms. Dougherty resulted consequent to a reorganization and a concurrent budget reduction causing a downsizing in the purchasing department; and, second, that in order to downsize, Ms. Dougherty, one of two senior buyers, was dismissed because the other senior buyer had superior skills and experience. With these reasons having been interposed, it is incumbent upon Ms. Dougherty "to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful age discrimination." *LeBlanc*, 6 F.3d at 842 (citations omitted).

### 3. Is the Asserted Reason A Pretext for Discrimination?

In order to prove pretext, the plaintiff must present evidence which rebuts the reason or reasons articulated by the defendant. First, plaintiff argues that the purported reduction in budget is a pretext because the budget for the purchasing department actually grew from 1993 to 1994 as reflected in the budget documents provided by BCBS. Ms. Dougherty focuses on the budget for salaries: the annual budget for salaries increased by 23% ($595,367 to $736,510) from November of 1993 to January of 1994. That amount remained the same in February of 1994, but was subsequently reduced by 19% ($736,510 to $590,897) in March of 1994. BCBS claims that the budget for salary figures was inflated during January and February of 1994 because those figures temporarily included salaries for the oversight group. (# 32) Regardless, even based upon the plaintiff's interpretation of the figures, the budget for salaries actually decreased from 1993 to 1994 by $4,479.00.

Moreover, the plaintiff's argument is off the mark. The reason articulated by BCBS for dismissing Ms. Dougherty was that they were reducing staff to meet a budget reduction, not that they were reducing the salary budget. The documents cited by the plaintiff reveal that the overall budget for the cost purchasing center, which included employees' salaries, was reduced from November of 1993 through March of 1994. The total budget for the purchasing department was reduced by 99% ($864,551 to $780,118) from November 1993 to January of 1994, was reduced by 3% ($780,118 to $779,838) in February of 1994, and even further reduced by 29% ($779,838 to $587,017) in March of 1994. In short, there appears to have been an absolute reduction in total costs. This evidence, even viewed in the light most favorable to the plaintiff, shows that the budget has actually been reduced. It in no way can be viewed as implicating the veracity of BCBS' articulated reason for terminating Ms. Dougherty.

The plaintiff further claims that there was no reduction in force because she was the only person terminated during the first six months of 1994. A work force reduction, however, "occurs when business considerations cause an employer to eliminate one or more positions within the company." *LeBlanc*, 6 F.3d at 845 (citing *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir., 1990)). Even if Ms. Dougherty was the only employee dismissed, that fact alone does not prove either that a reduction in force did not occur, or that the reason advanced by BCBS was a pretext.

With respect to this third stage of the analysis, the First Circuit has repeatedly em-

phasized that "[t]he key question becomes whether the employer fired the plaintiff **because of age.**" *Connell v. Bank of Boston,* 924 F.2d 1169, 1172 (1st Cir.), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991) (citations omitted) (emphasis added). Ms. Dougherty must "do more than just cast doubt on the employer's justification for the challenged action; there must be a sufficient showing that discriminatory animus motivated the action." *Goldman,* 985 F.2d at 1117. Further, "[d]irect or indirect evidence of discriminatory motive may do, but the evidence as a whole must be sufficient for a reasonable factfinder to infer that the employer's decision was **motivated by age animus.**'" *Id.* (quoting *Connell,* 924 F.2d at 1172 n. 3).

The facts upon which Ms. Dougherty relies to prove discriminatory animus are that BCBS, before firing her, hired two younger women who were retained in the plaintiff's position. Ms. Dougherty asserts this is sufficient evidence, essentially identical to that presented to prove the fourth element of her prima facie case, to support a reasonable inference of age discrimination. While satisfying a prima facie case under the ADEA is not an onerous burden, "[a] plaintiff alleging age discrimination bears the ultimate burden of proving that [her] years were the determinative factor in [her] discharge, that is, that [s]he would not have been fired but for [her] age.'" *Goldman,* 985 F.2d at 1116–17, (citations omitted). To more fully explain,

> [a] showing that the employer's justification was not the actual motive may be enough if facts and circumstances raise a reasonable inference of age discrimination.... Nevertheless, the plaintiff-employee cannot avert summary judgment if the record is devoid of direct and circumstantial evidence of discriminatory animus on the part of the employer.

*Goldman,* 985 F.2d at 1117–18.

The plaintiff has no direct evidence of discriminatory age animus on the part of BCBS. Moreover, Ms. Dougherty has not produced any circumstantial evidence such as disparate treatment of members of the protected class or statistical evidence which tends to prove that older employees were disproportionately affected by the reduction in work force. BCBS, on the other hand, has produced statistical evidence unrebutted by the plaintiff which tends to negate age animus. In 1994 BCBS reduced the number of employees in the purchasing department from twenty-three to twenty-one. Of the twenty-one employees retained, fourteen (67%) are over forty years old. The department was further reduced from twenty-one to eighteen in 1994–1995 when three other employees were terminated by BOBS. Of the then eighteen remaining employees, twelve are over forty years old, and of the five employees terminated or reassigned, three were over forty and two were under the protected age.

The law is clear that in order to survive a motion for summary judgment, the plaintiff must do more than prove that BOBS' articulated reasons were false or erroneous. It is incumbent upon the plaintiff to "put forth definite, competent evidence' fortifying her version of the truth." *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir. 1993) (quoting *Mesnick,* 950 F.2d at 822). Ms. Dougherty has utterly failed to submit such evidence. Indeed, taking all of the evidence submitted in the light most favorable to Ms. Dougherty, there is nothing, either direct or circumstantial, that demonstrates age animus on the part of BCBS. The "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason so long as the decision to fire does not stem from the person's age." *Medina–Munoz,* 896 F.2d at 10. Because the plaintiff has failed to make a showing sufficient to raise a genuine issue of material fact with respect to this final element of her claim, the entry of summary judgment in favor of the BCBS is appropriate.

### B. The State Law Claim of Age Discrimination

Ms. Dougherty has not argued that any different standard should apply to the analysis of her claim alleged under Mass. Gen. L. ch. 151B, § 4, thus, no distinction need be made between the federal and state claims. *See, Goldman,* 985 F.2d at 1116 n. 3. Moreover, dismissal of the state law claim follows with the entry of judgment on the sole feder-

al claim prior to trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Vega,* 3 F.3d at 478 n. 2.

### V. CONCLUSION

I rule that the plaintiff has failed to establish a prima facie case. I further rule that even if it was assumed that the plaintiff did make out a prima facie case, she has failed to adduce sufficient evidence' upon which a jury could find that the defendant's asserted reasons for her termination were a pretext for age discrimination. Accordingly, it is ORDERED that the Defendant's Motion For Summary Judgment (# 4) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendant.