RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JAMES D. SZEKERES,

        *Plaintiff-Appellant*,

    *v.*

CSX TRANSPORTATION, INC.,

        *Defendant-Appellee.*

No. 12-3689

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:08-cv-01153—John R. Adams, District Judge.

Argued: April 24, 2013

Decided and Filed:  September 25, 2013

Before:  GRIFFIN and KETHLEDGE, Circuit Judges; ZATKOFF, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Robert E. Harrington III, HARRINGTON, THOMPSON, ACKER & HARRINGTON, LTD., Chicago, Illinois, for Appellant.  Dan Himmelfarb, MAYER BROWN LLP, Washington, D.C., for Appellee.  **ON BRIEF:** Robert E. Harrington III, Robert B. Thompson, HARRINGTON, THOMPSON, ACKER & HARRINGTON, LTD., Chicago, Illinois, for Appellant.  Dan Himmelfarb, MAYER BROWN LLP, Washington, D.C., Joseph J. Santoro, GALLAGHER SHARP, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

ZATKOFF, District Judge.  Plaintiff James D. Szekeres appeals the district court's grant of Defendant's renewed motion for judgment as a matter of law with

_____

[*]The Honorable Lawrence P. Zatkoff, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

respect to Plaintiff's claims pursuant to Federal Employers Liability Act ("FELA") and the Locomotive Inspection Act ("LIA"). The district court's ruling stemmed from the United States Supreme Court's opinion in *CSX Transportation, Inc. v. McBride*, 131 S. Ct. 2630 (2011), wherein the Supreme Court endorsed the dismissal of a FELA action in *Nicholson v. Erie R.R. Co.*, 253 F.2d 939 (2d Cir. 1958). The district court concluded that the facts of *Nicholson* were not meaningfully distinguishable from the facts of this case and vacated the jury's verdict in favor of Plaintiff on both the FELA and LIA claims. The district court did not address Defendant's motion for a new trial before dismissing Plaintiff's cause of action. Plaintiff contends that the district court erred when it concluded that Plaintiff failed to provide sufficient proof of causation between the jury-determined violations under FELA and LIA and Plaintiff's injuries. For the reasons that follow, we **REVERSE** the district court's ruling on Defendant's Rule 50(b) renewed motion for judgment as a matter of law, **DENY** Defendant's motion for a new trial, and **ORDER** the district court to reinstate the jury's verdict in favor of Plaintiff on his FELA and LIA claims.

## I. BACKGROUND

### A.    The Incident

Plaintiff began working for Defendant in 1967. On January 4, 2006, he was working as a brakeman on a crew of three individuals responsible for taking a freight train from a Defendant-owned yard in Cleveland to Medina County, Ohio and back. The crew traveled south and stopped in Valley City, Ohio. At that stop, Plaintiff's job function was to operate a railroad ground switch (the "Valley City switch") back and forth to move the alignment of the railroad track so the locomotive could push the train into an industrial yard in Valley City. Plaintiff stood behind the Valley City switch and operated the Valley City switch approximately ten to fifteen times for 30 minutes to an hour. Defendant's safety rules required Plaintiff to stand at least 10 feet behind the Valley City switch while operating it to protect himself from injury in the event of a derailment. As discussed below, multiple witnesses testified at trial that the ground

where Plaintiff worked was muddy and was not covered with ballast.[1]  Photos taken hours after the incident at issue also show that the ground where Plaintiff had to stand was muddy and not covered with ballast.

Plaintiff had to urinate while operating the Valley City switch.  Plaintiff testified that he planned to urinate outside–rather than in the toilet compartment of the locomotive assigned to their job–because he had looked at the toilet compartment earlier that day and found it to be "dirty," "smelly," "filthy," and "unusable."  Plaintiff testified that, had the toilet compartment not been dirty and unusable, he would have used it.  Instead, once Plaintiff completed his tasks at the Valley City switch, he began to walk from the Valley City switch to a more private outdoor location in the field behind the tracks.  The path Plaintiff chose led him up a slight incline.  Within steps of the Valley City switch, Plaintiff slipped and twisted his right knee.  Plaintiff was diagnosed with a torn right meniscus and underwent surgery to repair the cartilage in his knee.

**B.     Procedural History**

Plaintiff filed this cause of action in the Northern District of Ohio on May 8, 2008.  On July 2, 2009, the district court (Aldrich, J.) granted Defendant's motion for summary judgment and dismissed all of Plaintiff's claims.  On August 16, 2010, this court reversed the district court's summary judgment order after finding that genuine disputes of material fact existed with respect to both the FELA and LIA claims and remanded the case back to district court for a trial by jury.  *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424 (6th Cir. 2010).  On August 27, 2010, the case was reassigned from Judge Ann Aldrich to Judge John R. Adams.  After being adjourned pending the Supreme Court's decision in *McBride*, a jury trial was held in August 2011.  At the close

---

[1]As set forth in *CSX Transp., Inc. v. Pitts*, 61 A.3d 767, 770 n.1 (Md. 2013):

"Ballast" is a technical term used by the railroad industry to denote what would otherwise be commonly known as crushed rock.  There are two different grades of ballast.  Large ballast–also termed mainline ballast, track ballast, or road ballast–ranges in size between approximately 1" to 2 3/4" in diameter.  Small ballast–also termed walkway ballast or yard ballast–ranges in size between approximately 3/8" to 1" in diameter.  The two grades of ballast serve different functions.  Large ballast is used to support the railroad tracks and facilitate drainage.  Small ballast is better suited for walking surfaces than large ballast.

of Plaintiff's case-in-chief, Defendant filed a motion for judgment as a matter of law with respect to both the FELA and LIA claims, relying primarily on *Nicholson*. The district court denied that motion and permitted the trial to continue. A unanimous jury found: (a) Defendant had violated the LIA and that the LIA violation caused Plaintiff's injuries, (b) Defendant was negligent under FELA and its negligence was a cause of Plaintiff's injuries, (c) Plaintiff was comparatively negligent with respect to the FELA claim, such that Defendant was 60% at fault and Plaintiff was 40% at fault, and (d) Plaintiff's total damages were $49,000.00. Judgment was entered in the amount of $49,000.00 because no reduction for comparative fault is permitted under the LIA.

Defendant then filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b) with respect to both the FELA and LIA claims or, in the alternative, motion for a new trial pursuant to Rule 59(a). On June 5, 2012, relying on *McBride* and *Nicholson*, the district court entered judgment as a matter of law in favor of Defendant with respect to both claims. After finding "no meaningful distinction between the facts at issue in *Nicholson* and the facts presented by" Plaintiff, the district court held that there was not sufficient causation to assess liability against Defendant on the LIA claim. For the same reasons, the district court held that Plaintiff failed to present adequate proof of causation to support the jury's verdict with respect to the FELA claim. The district court then vacated the jury's verdict and dismissed Plaintiff's cause of action. The district court expressly noted it was not making a conditional ruling on Defendant's Rule 59(a) motion for new trial.

## II. RULE 50(b) MOTION

### A.     Standard of Review

We review *de novo* the district court's grant of a Rule 50(b) motion for judgment as a matter of law. "In a federal question case, the standard of review for a Rule 50 motion based on sufficiency of the evidence is identical to that used by the district court. The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The judgment of this court should not be substituted for that of the jury;

instead, the evidence should be viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 531 (6th Cir. 2005). The Rule 50(b) motion should be granted only if "reasonable minds could not come to a conclusion other than one favoring the movant." *Id.*

**B.     *McBride***

In *McBride*, the Supreme Court set forth several clearly established principles of FELA law. First,

> Liability under FELA is limited in these key respects: Railroads are liable *only* to their employees, and *only* for injuries sustained in the course of employment.

*McBride*, 131 S. Ct. at 2636 (emphasis added).

Second, in order to prove causation under FELA, an employee must prove *only* that the railroad's negligence played *a* part in producing the injury for which the employee seeks damages:

> FELA's language on causation, however, "is as broad as could be framed." Given the breadth of the phrase "resulting in whole or in part from the [railroad's] negligence," and Congress' "humanitarian" and "remedial goal[s]," we have recognized that, in comparison to tort litigation at common law, "a relaxed standard of causation applies under FELA." In our 1957 decision in *Rogers* [*v. Missouri Pacific Railroad Company*, 352 U.S. 500, 506 (1957)], we described that relaxed standard as follows:
>
>> "Under [FELA,] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

*Id.* (internal citations omitted). Significantly, Congress has not taken action to change the FELA causation standard the Supreme Court announced over a half-century ago:

> In sum, the understanding of *Rogers* we here affirm "has been accepted as settled law for several decades. Congress has had [more than 50] years in which it could have corrected our decision in [*Rogers*] if it disagreed with it, and has not chosen to do so." Countless judges have instructed countless juries in language drawn from *Rogers*. To discard or restrict the *Rogers* instruction now would ill serve the goals of "stability" and "predictability" that the doctrine of statutory *stare decisis* aims to ensure.

*Id.* at 2641 (internal citations omitted).

Third, even though the relaxed proximate causation standard set forth in *Rogers*–and not the common law proximate cause standard–governs FELA cases, a defendant railroad will not be liable for every possible link of causation. Rather, though "FELA's language is straightforward: railroads are made answerable in damages for an employee's 'injury or death resulting in whole or in part from [the railroad's] negligence[,]" *id.* at 2643 (citing 45 U.S.C. § 51), the harm caused by the negligence of the railroad must be reasonably foreseeable:

> [T]he phrase "proximate cause" is shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes. Prosser and Keeton explain: "In a philosophical sense, the consequences of an act go forward to eternity and the causes of an event go back to the dawn of human events, and beyond." [W. Keeton, D. Dobbs, R. Keeton,, & D. Owen, Prosser and Keeton on Law of Torts (5th ed. 1984)] § 41, p. 264. To prevent "infinite liability," *ibid.*, courts and legislatures appropriately place limits on the chain of causation that may support recovery on any particular claim.
>
> * * * * *
>
> "[R]easonable foreseeability of harm" we clarified in *Gallick* [*v. Baltimore & Ohio R. Co.*, 372 U.S. 108 (1963)] is indeed "an essential ingredient of [FELA] *negligence*." 372 U.S., at 117, 83 S. Ct. 659 (emphasis added). The jury, therefore, must be asked, initially: Did the carrier "fai[l] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances[?]" *Id.*, at 118, 83 S. Ct. 659. ... Thus, "[i]f a person has no reasonable ground to anticipate that a particular condition ... would or might result in a mishap and injury, then the party is not required to do

anything to correct [the] condition." *Id.*, at 118, n. 7, 83 S. Ct. 659 (internal quotation marks omitted).  If negligence is proved, however, and is shown to have "*played any part, even the slightest, in producing the injury,*" *Rogers*, 352 U.S., at 506, 77 S. Ct. 443 (emphasis added), then the carrier is answerable in damages even if "the extent of the [injury] or the manner in which it occurred" was not "[p]robable" or "forseeable." *Gallick*, 372 U.S., at 120-121, and n. 8, 83 S. Ct. 659 (internal quotation marks omitted); see 4 F. Harper, F. James, & O. Gray, Law of Torts § 20.5(6), p. 203 (3d ed. 2007); 5 Sand 89-21.

*McBride*, 131 S. Ct. at 2642-43 (footnotes omitted).

Based on the language in *McBride*, we reject Defendant's contention that *McBride* created any new rule of law for FELA cases.  Instead, we find that *McBride* simply reaffirmed *Rogers* and the causation standard that has governed FELA cases for over 50 years.

The Supreme Court also clarified that certain "far out 'but for' scenarios" will not, as a matter of law, support viable FELA claims. The Supreme Court cited *Nicholson* as an example of such a case:

> Properly instructed on negligence and causation, and told, as is standard practice in FELA cases, to use their "common sense" in reviewing the evidence, see Tr. 205 (Aug. 19, 2008), juries would have no warrant to award damages in far out "but for" scenarios. Indeed, judges would have no warrant to submit such cases to the jury. See *Nicholson v. Erie R. Co.*, 253 F.2d 939, 940-941 (C.A.2 1958) (alleged negligence was failure to provide lavatory for female employee; employee was injured by a suitcase while looking for a lavatory in a passenger car; applying *Rogers*, appellate court affirmed lower court's dismissal for lack of causation); *Moody v. Boston and Maine Corp.*, 921 F.2d 1, 2-5 (C.A.1 1990) (employee suffered stress-related heart attack after railroad forced him to work more than 12 hours with inadequate breaks; applying *Rogers*, appellate court affirmed grant of summary judgment for lack of causation). See also *supra*, at 2641 (*Rogers* has generated no extravagant jury awards or appellate court decisions).

> In addition to the constraints of common sense, FELA's limitations on who may sue, and for what, reduce the risk of exorbitant liability.  As earlier noted, see *supra*, at 2636, the statute confines the universe of compensable injuries to those sustained by employees, during employment. § 51.  Hence there are no unforeseeable plaintiffs in FELA

cases. And the statute weeds out the injuries most likely to bear only a tenuous relationship to railroad negligence, namely, those occurring *outside* the workplace.

*McBride*, 131 S. Ct. at 2643-44 (footnote omitted) (emphasis in original).

**C.     LIA Claim**

Under LIA, 49 U.S.C. § 20701, *et seq.*, and 49 C.F.R. §§ 229.137 and 229.139, a railroad must provide a sanitary toilet on its locomotive for use by employees while on duty. The jury determined that Defendant violated LIA by providing Plaintiff with an unsanitary bathroom. Defendant does not challenge that finding in this appeal. Rather, Defendant argues that the jury did not have sufficient evidence to find that the LIA violation caused Plaintiff's injury. A LIA violation constitutes negligence per se under FELA only if Plaintiff can establish that the violation was a cause of the injury. *See Szekeres*, 617 F.3d at 427. Thus, we must look to the causation standard under FELA to determine whether the jury could find for Plaintiff with regard to his LIA claim.

Under FELA, a "railroad 'caused or contributed to' a railroad worker's injury 'if [the railroad's] negligence played a part–no matter how small–in bringing about the injury.' That, indeed, is the test Congress prescribed for proximate causation in FELA cases." *McBride*, 131 S. Ct. 2644.

The district court found "that the express approval of *Nicholson* by the United States Supreme Court after remand in this matter compels a conclusion that judgment as a matter of law in favor of [Defendant] is appropriate." In ruling on Defendant's renewed motion for judgment as a matter of law, the district court oversimplified the facts of both *Nicholson* and this case as they relate to causation. The district court stated: "Precisely like the plaintiff in *Nicholson*, [Plaintiff argues that] '[i]f [Defendant] had supplied indoor toilet facilities [P]laintiff ... would not have been where [the injury took place].'" (quoting *Nicholson*, 253 F.2d at 941). As the Second Circuit concluded in *Nicholson*, the district court found that the facts of this case "present[] a far out but

for scenario of causation that does not satisfy even the relaxed standard of causation for FELA and LIA claims."

This court rejects: (a) the district court's oversimplification of the facts of *Nicholson* and this case, and (b) its conclusion that the Supreme Court's endorsement of *Nicholson* dictates judgment as a matter of law for Defendant on Plaintiff's FELA claim. It is true that three important facts were present in both *Nicholson* and this case: (1) both Plaintiff and the *Nicholson* plaintiff were railroad employees, (2) there was not a usable lavatory available to either of them, and (3) both plaintiffs ultimately were injured as the result of seeking to relieve themselves. The district court relied on only the very limited facts of *Nicholson* set forth in *McBride*. In doing so, however, the district court ignored several key facts of *Nicholson* that were materially different than the key facts in this case.

First, in *Nicholson*, the plaintiff was off-duty when the incident occurred. In this case, Plaintiff was on the job when the incident occurred. Second, in *Nicholson*, the plaintiff was on defendant railroad property but was not working at her workplace when she was injured; rather, she was on a passenger locomotive for the purpose of using the women's lavatory.[2] In this case, Plaintiff was on Defendant's property, engaged in the scope of his employment, and walking in an area one of Defendant's supervisors acknowledged was used by railworkers to relieve themselves. Third, in *Nicholson*, the direct cause of the plaintiff's injury was the result of a passenger striking her with something the passenger was carrying (*i.e.*, the injury was proximately caused by the action of an intervening third-party). No intervening objects, actors or actions were involved in this case; Plaintiff was alone when he walked from the muddy area behind the Valley City switch and slipped and fell on the incline as it existed in its natural state. Therefore, taking the facts in a light most favorable to Plaintiff, as this court must do in analyzing a Rule 50(b) motion, Plaintiff fell on an incline due to mud that accumulated on his shoes while he worked in the area behind the Valley City switch.

---

[2]As the *Nicholson* plaintiff was off-duty and not working at her workplace when she sustained her injury, she was not eligible, as a matter of law, to recover damages pursuant to FELA. *See* 45 U.S.C. § 51; *McBride*, 131 S. Ct. at 2636, 2644.

For the foregoing reasons, this court concludes that the facts of this case: (a) are distinguishable from the facts of *Nicholson*,[3] and (b) do not constitute the kind of "far out 'but for' scenario" discussed in *McBride*. Plaintiff was an employee of Defendant who was engaged in the course of employment, at his workplace, when the injury at issue occurred. Accordingly, as recognized by the Supreme Court in *McBride*, Plaintiff was precisely the kind of foreseeable plaintiff contemplated by FELA. *See* 45 U.S.C. § 51; *McBride*, 131 S. Ct. at 2644. We therefore hold that the district court erred in granting judgment as a matter of law as to Plaintiff's LIA claim.

**D.    FELA Claim**

The district court also concluded that Defendant was entitled to judgment as a matter of law on the FELA claim because Plaintiff relied solely upon speculation to establish causation between the muddy area behind the switch and plaintiff's injury. When granting Defendant's motion for judgment as a matter of law, the district court held that causation was not established because Plaintiff did not testify that he saw mud on his shoes after being in the area behind the Valley City switch. The district court, however, did not give appropriate consideration to: (1) certain testimony of Plaintiff, (2) the testimony of others, (3) the photographs of the incident scene, and (4) the ability of a person to realize he or she had mud on his or her boots, even without looking at the boots.

Specifically, the district court did not credit Plaintiff's testimony that the ground conditions where he stood behind the Valley City switch were muddy and not covered with ballast. Plaintiff's testimony regarding the muddy conditions behind the Valley City switch not only was unchallenged, but it was corroborated by Larry Ashby, the

---

[3]The court also finds the facts of this case materially distinguishable from those of *Moody*; specifically: (1) the plaintiff-decedent was off-duty; (2) the plaintiff-decedent was on a family camping trip, clearly off-site at the time he suffered a heart attack that he attributed to work-related stress; and (3) the incident occurred several days after the plaintiff's most recent day at work, not while working for his railroad employer. As such, the only like material facts between *Moody* and the instant case are that both Plaintiff and the *Moody* plaintiff-decedent were railroad employees who suffered an injury/death. As the *Moody* plaintiff-decedent did not die during the course of his employment, however, his FELA claim also was subject to dismissal, as a matter of law. *See* 45 U.S.C. § 51; *McBride*, 131 S.Ct. at 2636, 2644.

conductor of the three-man crew on which Plaintiff worked when he was injured on January 4, 2006. Larry Ashby stated that the area was "wet, damp and muddy." Their testimony was supported by photographs of the Valley City switch area taken hours after the incident. In addition to their testimony and those photographs, John Whittenberger, a supervisor for Defendant who visited the site hours after the incident occurred, testified that the area behind the Valley City switch consisted of dirt mixed with stone and that dirt becomes muddy when wet.

This court holds that the foregoing evidence, taken in the aggregate, constituted sufficient evidence from which a jury could reasonably conclude that: (a) the area behind the Valley City switch was muddy, (b) mud had accumulated on Plaintiff's boots as a result of standing where required while operating the Valley City switch, and (c) such mud was a cause of Plaintiff's fall.

This court also finds that there was sufficient evidence from which a reasonable jury could conclude that the mud in the area behind the Valley City switch was the due to Defendant's negligence and that such negligence played a part in causing Plaintiff's injury. First, Larry Ashby testified that, prior to January 4, 2006, he had reported to railroad management at a safety meeting that ballast was needed behind the Valley City switch to improve unsafe ground conditions. Second, Whittenberger testified that mud was a recognized slipping hazard in the railroad industry. As we have previously stated, "if as a result of a defective appliance a plaintiff is required to take certain actions and he or she is injured while taking those actions, the issue of causation generally should be submitted to the jury." *Richards v. Consolidated Rail Corp.*, 330 F.3d 428, 437 (6th Cir. 2003). Based on the evidence admitted at trial, this court holds that a reasonable jury could conclude that Plaintiff's injury "was within the risk created by" the unusable toilet and the muddy conditions; therefore Plaintiff's right to the jury verdict should be preserved. *See id.* In other words, we find that "the proofs justify with reason the conclusion that [Defendant's] negligence played [a] part, even the slightest, in producing the injury ... for which damages are sought" in this case. *McBride*, 131 S.Ct. at 2636 (quoting *Rogers*, 352 U.S. at 506).

This court also finds erroneous the district court's conclusion that it was mere speculation that Plaintiff had mud on the bottom of his boots after being in the Valley City switch area simply because Plaintiff did not testify that he "saw" mud on his boots. Rather, a reasonable jury could conclude that a person is aware that he or she has mud on the bottom of his or her boots simply by walking in the boots - especially when such person observed that the area in which he or she walked was muddy. In fact, Plaintiff, Larry Ashby, and Whittenberger all acknowledged as much at trial. Plaintiff stated that he did not look at and see mud on the bottom of his boots, but he also stated: (1) "[Mud] was on the bottom of my shoe," (2) "[t]he mud was on my shoes because there was mud everywhere," and (3) "You're walking on your boot. You know when there is mud on the bottom of your boot." Larry Ashby also stated that he never looked at the bottom of his boots, but he could feel the mud on them after walking in the area behind the Valley City switch. ("Q. When you walked in this area [behind the Valley City switch], did you get mud on your work boots? A. Yes.") ("Q. Did you actually see the mud on the bottom of your boots? Did you look at it? A. Well, you just feel it. It's there. No, I didn't [see mud on my boots].") Finally, Whittenberger testified that although he did not look directly at his shoes, he believed he accumulated mud on his shoes walking in the area behind the Valley City switch. Therefore, a reasonable jury could find that each of three witnesses testified he accumulated (or, in the case of Whittenberger, believed he accumulated) mud on his shoes as a result of walking in the area behind the Valley City switch on January 4, 2006.

For the foregoing reasons, this court concludes that there was sufficient evidence upon which the jury reasonably could have found that Plaintiff satisfied his burden of proving causation to the extent required by FELA and *McBride*. Therefore, this court holds that the district court erred in granting judgment as a matter of law on Plaintiff's FELA claim.

**E.     Testimony of James A. Arton**

At trial, the district court allowed the testimony of James Arton ("Arton") as an expert for Plaintiff.[4]   When considering Defendant's Rule 50(b) motion, however, the district court made a conclusory determination that Arton's testimony should have been excluded but did not analyze the issue in the opinion or, apparently, rely on that determination in granting the Rule 50(b).  The district court stated only:

> First, CSX challenges the expert testimony offered by James Arton. While ultimately the Court agrees that Arton's testimony should have been excluded, it need not reach that issue to find that CSX is entitled to judgment as a matter of law.s

Contrary to Defendant's argument and as this court has recognized, expert testimony is not necessary to support allegations of negligence. *See, e.g., Richards*, 330 F.3d at 433 (plaintiff's testimony alone was sufficient to show that an appliance failed to function properly). *See also Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 59 (2d Cir. 1996) (it was within the common knowledge of the jury to determine whether there was a link between exposure to paint fumes and claimed headaches); *Lynch v. METRA*, 700 F.3d 106, 915 (7th Cir. 2012) (no expert testimony needed on "easily understood" concept of improper installation of equipment).  For the reasons discussed above, including the testimony of Whittenberger that mud is a recognized hazard in the railroad industry, this court finds that, even without the testimony of Arton, there was sufficient evidence upon which a reasonable trier of fact could conclude that the muddy conditions and/or lack of ballast in the area behind the Valley City switch was a cause of Plaintiff's injury under FELA and LIA.  Thus, this court need not decide whether Arton's testimony should have been considered in deciding the Rule 50(b) motion.

---

[4]According to Arton, it was recognized in the industry that ballast should be used in places where employees are required to walk and work near railroad track. He stated that: (1) the purpose of ballast in this regard was to provide stable and dry footing for railroad employees to assist them in their trackside duties, (2) the presence of mud is a recognized hazard in the railroad industry leading to slip, trip and fall injuries, and (3) placing ballast in areas where employees walk and work greatly reduces the risk of injury to employees working in these areas.  Based on the testimony of the witnesses and photos of the Valley City switch area, Arton opined that the railroad knew or should have known that the walking conditions behind the Valley City switch as they existed on January 4, 2006, presented an unsafe working condition for its employees due to the lack of ballast located on the ground behind the Valley City switch.

### III.  RULE 59(a) MOTION

The district court expressly stated that it was not addressing Defendant's Rule 59(a) motion for a new trial because it would do so in the event this court remanded the case.  As the parties agree, the district court erred when it failed to make a conditional ruling on the Rule 59(a) motion, as required by Rule 50(c)(1), which provides:

> If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed.  The court must state the grounds for conditionally granting or denying the motion for a new trial.

Neither party, however, moved the district court to rule on the Rule 59(a) motion; instead, Plaintiff filed his appeal the same day as the district court issued its opinion. Plaintiff asks this court to rule on the Rule 59(a) motion now, in the interest of judicial economy and to prevent another trial and potential appeal.  Defendant asks this court to remand the case to the district court so that it can make the initial ruling on the Rule 59(a) motion.

This court has recognized that "if the judgment notwithstanding the verdict is reversed on appeal, it is within the appellate court's discretion to determine whether the case should be sent back for a new trial" when the district court also conditionally granted the motion for new trial but did not specify the grounds for the conditional grant. *See Portage II v. Bryant Petro. Corp.*, 899 F.2d 1514, 1524 (6th Cir. 1990) (citing *Ross v. Chesapeake & Ohio Rlwy. Co.*, 421 F.2d 328, 330 (6th Cir. 1970)).   In such circumstances, we also have the authority to reinstate the verdict of the jury. *Id.* at 1525.

This court has not expressly decided whether it can consider the motion for a new trial if the district court failed to address the motion for a new trial, but other circuits have and some have determined that an appellate court can rule on such a motion if the district court fails to consider the motion, as required by Rule 50(c)(1). *See, e.g.*, *Acosta v. San Francisco*, 83 F.3d 1143, 1149 (9th Cir. 1996) ("[W]e have discretion to either remand to the district court to let it decide the new trial motion or to decide the new trial

motion ourselves"); *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 109-10 (4th Cir. 1974) ("[I]t would be absurd to hold that we may not grant [a new trial where a district court fails to conditionally rule on the motion for new trial] because of the error of the district judge in failing to either grant or refuse the motion for a new trial.").

This court likewise concludes that it can rule on a Rule 59(a) motion for a new trial if a district court fails to consider such a motion after ruling on a motion for judgment as a matter of law.   The rationale expressed by the Fourth Circuit is particularly instructive and persuasive:

> There is authority for the proposition that we now have no alternative other than to remand either for a third new trial or for the district judge to consider anew whether to grant another trial. *See Casper v. Barber & Ross Co.*, 109 U.S. App. D.C. 395, 288 F.2d 379, 385 (1961) (Miller, J., concurring and dissenting).  But the better viewpoint, it seems to us, is that suggested by Professor Moore, who points out that where the judgment n.o.v. is reversed and the trial court has alternatively granted the motion for a new trial, the case will ordinarily be remanded for a new trial, "but the courts of appeals have authority to order 'otherwise.'"  5A Moore's Federal Practice § 50.14, at p. 2382 (2d ed. 1974).  **If the court of appeals may reverse the grant of a new trial and order entry of judgment on the verdict, and it seems settled that we may do so**[. S]ee, e.g., *Powell v. Lititz Mut. Ins. Co.*, 419 F.2d 62 (5th Cir. 1969); *Berner v. British Commonwealth Pacific Airlines, Inc.*, 346 F.2d 532 (2d Cir. 1965), cert. denied, 382 U.S. 983, 86 S. Ct. 559, 15 L.Ed. 2d 472 (1966)[.]  **[I]t would seem absurd to hold that the remedy is circumscribed by the failure of the district judge to follow the command of Rule 50(c) to rule on the motion for a new trial.**  It is getting things a bit backwards to exposit the rule to mean that the granting of a new trial may be reviewed and reversed but that the failure to either grant or deny a new trial compels remand to allow the district judge, in his unappealable discretion, to grant or deny yet another trial. **It could not have been intended that a district judge by failing to comply with Rule 50(c) can enhance his power and curtail that of the appellate court.**  It is not surprising that Rule 50(c) is silent as to the effect of the failure of the district judge to follow the mandate of the rule. Rules seldom contemplate what will happen if they are disregarded.
>
> In a day of trial court congestion and repetitive pleas for judicial efficiency, it would be absurd to hold that we may not grant similar relief because of the error of the district judge in failing to either grant or refuse the motion for a new trial. *Vera Cruz v. Chesapeake & O.R.R.*, 312 F.2d

330, 332 (7th Cir.), *cert. denied*, 375 U.S. 813, 84 S. Ct. 44, 11 L.Ed. 2d 49 (1963). *See Powell v. Lititz Mut. Ins. Co.*, 419 F.2d 62 (5th Cir. 1969).

*Mays*, 502 F.2d at 110 (emphasis added).

The court now turns to whether it should remand this case or address the motion for a new trial at this time. Defendant's Rule 59(a) motion was based on two issues: (a) that the verdict was against the manifest weight of the evidence, and/or (b) the verdict was improperly influenced by the expert opinion of Arton. As discussed above, there was sufficient evidence produced at trial for a reasonable jury to conclude, as the jury did in this case, that Defendant was guilty of negligence under FELA for failing to maintain a sanitary toilet on the locomotive and failing to put ballast behind the Valley City switch to prevent muddy conditions. Likewise, there was sufficient evidence upon which a reasonable jury could conclude that Defendant violated the LIA when it failed to maintain a sanitary toilet on the locomotive.

A review of the trial transcript also reveals that Arton's testimony added little, if anything, to the evidence presented to the jury that the jury did not hear from other witnesses. Specifically, like Arton, Larry Ashby testified that ballast was needed at the Valley City switch; in fact, Larry Ashby had complained to Defendant's management about this safety concern prior to January 4, 2006. In addition, like Arton, Whittenberger testified that the presence of mud is a recognized hazard in the railroad industry. Therefore, even if it was error to admit Arton's testimony at trial, it was harmless error as Arton's testimony could not have improperly influenced the jury. Rather, as we have concluded, "there is evidence in the record from which the jury could find that the injuries complained of resulted at least in part from [Defendant's] negligence," *Ross*, 421 F.2d at 330, and Defendant's violation of the LIA.

Accordingly, this court concludes that there is no basis for granting Defendant's alternative motion for a new trial pursuant to Rule 59(a) and denies the same.

## IV.  CONCLUSION

For the reasons set forth above, this court **REVERSES** the district court's ruling on Defendant's Rule 50(b) renewed motion for judgment as a matter of law, **DENIES** Defendant's motion for a new trial, and **ORDERS** the district court to reinstate the jury verdict.