NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0334n.06

No. 22-3946

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VANESSA ENOCH; AVERY CORBIN, | ) | **FILED** |
| Plaintiffs-Appellees (22-3946)/Cross-Appellants (22-3959), | ) ) ) | Jul 31, 2024 KELLY L. STEPHENS, Clerk |
| v. | ) ) | |
| HAMILTON COUNTY SHERIFF'S OFFICE; BRIAN HOGAN and GENE NOBLES, Badge No. 1266, Deputy Sheriffs, | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendants-Appellees (22-3959), | ) ) | |
| CHARMAINE MCGUFFEY, Hamilton County Sheriff, | ) ) ) | OPINION |
| Defendant-Appellant (22-3946)/Cross-Appellee (22-3959). | ) ) | |

Before: SUHRHEINRICH, BUSH, and MURPHY, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Vanessa Enoch and Avery Corbin were arrested for recording in the hallway of a courthouse in Hamilton County, Ohio. They filed this action under 42 U.S.C. § 1983, asserting violations of their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as various state-law claims. We previously granted qualified immunity to the defendants on the plaintiffs' federal-law claims, and dismissed their appeal with respect to any official capacity claims for lack of jurisdiction. On remand, the district court dismissed all but one of the remaining claims, but held that the plaintiffs' speech-based retaliation claims could proceed to trial. Ultimately, a jury awarded judgment in favor of Enoch. The defendants appeal several of the district court's rulings at trial and its award of

attorney's fees to Enoch's counsel.  Because the defendants are entitled to judgment as a matter of law, we reverse.

## I.

### A.  Factual Background

Enoch and Corbin visited the Hamilton County courthouse on June 25, 2014 to attend a pretrial hearing in the criminal prosecution of Hamilton County Juvenile Judge Tracie Hunter.  Enoch attended the hearing to gather information for an article she was writing about Judge Hunter's trial.  Corbin had worked with Judge Hunter for several years, including as her bailiff during her tenure as a judge, and he served as a witness at the criminal proceeding.  Corbin exited the courtroom after the hearing and followed courthouse reporter Kimball Perry, taking pictures of Perry with an iPad.  Enoch entered the courtroom hallway around the same time and trailed behind Corbin and Perry.  She started taking pictures of Hunter, Hunter's attorney, and "everybody just coming out of the courtroom and standing outside the door" with her iPad.  Enoch Test., R. 191, PageID 3112.

Sheriff's Deputy Brian Hogan approached Enoch and told her to stop taking pictures.  Hogan told Deputy Gene Nobles that Enoch was using her iPad in the hallway, and Nobles asked Enoch to open the iPad to show him any recordings.  Enoch initially refused, but she did as Nobles asked after he told her that she would be arrested if she did not comply.  But when Nobles asked Enoch to provide her name and photo identification, she again refused to cooperate.

Hogan informed Enoch and Corbin that they were prohibited from using recording devices in the hallway under Hamilton County Local Rule 33.  Under the then-existing Rule 33, parties could not record "in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court."

Hamilton Cnty. Common Pleas Ct. R. 33(D)(6). "Judge Nadel, who presided at the Hunter proceedings, never entered an order defining the hallways as ancillary areas under Rule 33, in which recording was prohibited." Stipulations, R. 191, PageID 3077. Although no formal order was in place, Hogan and Nobles testified that they believed their actions were consistent with the policy of the Sheriff's Department. According to Hogan's understanding of Local Rule 33, individuals "who did not have express permission of a judge were not permitted to film or record anywhere in the courthouse." Hogan Test., R. 192, PageID 3366.

Enoch was arrested for using her iPad, and she was held in custody for approximately ninety minutes. She and Corbin were charged with disorderly conduct under Ohio Rev. Code Ann. § 2917.11, and Enoch was charged with failing to identify herself to law enforcement under Ohio Rev. Code Ann. § 2921.29. Their charges were subsequently dismissed.

Enoch and Corbin filed this action in 2016, asserting claims against Hogan, Nobles, and Sheriff Jim Neil in their individual and official capacities, as well as against Hamilton County.[1] They alleged that the defendants violated their rights under the First and Fourth Amendment, as incorporated by the Fourteenth Amendment. Specifically, they claimed that their arrest violated their rights to free speech (Count 1); that it was an unreasonable search and seizure (Count II) and unlawful detention (Count III); that Hogan and Nobles used excessive force when arresting them (Count IV); that they were subjected to a malicious prosecution (Count V); and that the defendants' actions violated state law. They also claimed that the County "expressly or tacitly approved, endorsed and ratified" Hogan and Nobles's conduct within the meaning of *Monell v. Department*

---

[1] Following her election as Hamilton County Sheriff, Charmaine McGuffey was substituted for Jim Neil pursuant to Federal Rule of Civil Procedure 25(d).

*of Social Services of City of New York*, 436 U.S. 658 (1978), by failing to properly investigate or discipline the deputies. Amended Compl., R. 38, PageID 180.

## B. *Enoch I*

The district court granted the defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) with respect to the plaintiffs' excessive force claim (Count IV), but denied the motion as to their remaining federal-law claims. This court affirmed. *Enoch v. Hogan*, 728 F. App'x 448, 449 (6th Cir. 2018) (*Enoch I*). We held that Hogan and Nobles were not entitled to qualified immunity based on the allegations in the pleadings because, although the deputies claimed their actions were justified under Rule 33, the text of the Rule does not expressly state that recording is prohibited in courtroom hallways. *Id.* at 454. After "accept[ing] Enoch and Corbin's allegation that they had violated no rule or law," the panel held that the plaintiffs had alleged that the deputies' actions violated their clearly established rights under the First Amendment by "punish[ing] them for gathering news about matters of public importance." *Id.* at 456.

## C. *Enoch II*

On remand and following discovery, the parties filed cross-motions for summary judgment. In relevant part, the district court denied the defendants' motion in full, and granted summary judgment to the plaintiffs on their First Amendment, Fourth Amendment wrongful-arrest, and Fourth Amendment malicious-prosecution claims. The district court also denied summary judgment to the defendants on the official capacity claim, explaining that "[t]here are genuine issues of fact as to the existence of a County policy that allegedly led to the arrests of plaintiffs for using their electronic recording devices in the Courthouse hallways." Order on Mots. for Summ. J., R. 101, PageID 1954.

We affirmed the district court's ruling in part, and reversed in part. *Enoch v. Hamilton Cnty. Sheriff's Off.*, 818 F. App'x 398, 407 (6th Cir. 2020) (*Enoch II*). We held that Hogan and Nobles were entitled to qualified immunity on the plaintiffs' Fourth Amendment claims because Enoch and Corbin's arrests were supported by probable cause. *Id.* at 404. Hogan and Nobles could not have "knowingly violate[d] the law" when they arrested Enoch and Corbin because the deputies reasonably believed that the plaintiffs violated Rule 33. *Id.* (citing *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020)). And even if the text of Local Rule 33 did not expressly define courtroom hallways as ancillary areas where recording was prohibited, "the unrebutted evidence shows that the common practice in the Hamilton County courthouse was to treat" hallways as ancillary areas. *Id.*

We also found that the defendants were entitled to qualified immunity on the plaintiffs' First Amendment claim. We recognized that Rule 33 was itself a reasonable, viewpoint neutral regulation that did not violate the First Amendment. *Id.* at 405 ("No one denies that Rule 33(D)(6) is a reasonable restriction on speech."). As for the plaintiffs' claim that they were singled out for arrest because of their speech, we held that at the time of the arrest, "it was not clearly established that an arrest supported by probable cause . . . could violate the First Amendment." *Id.* at 406 (quoting *Reichle v. Howards*, 556 U.S. 658, 663 (2012)). We noted that under *Nieves v. Bartlett*, 587 U.S. 391 (2019), a plaintiff could show retaliation with "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* (quoting *Nieves*, 587 U.S. at 407). However, because *Nieves* was decided after Enoch and Corbin's arrest, its exception to the probable cause requirement was not clearly established for qualified immunity purposes. *Id.*

We lastly held that we lacked jurisdiction over any official capacity claims because resolution of those claims was not "inextricably intertwined" with our qualified immunity analysis. *Id.* at 407. We accordingly dismissed the Sheriff-Appellants' "interlocutory appeal as it pertains to claims against them in their official capacities," and we remanded the case to the district court. *Id.* at 407.

### D. Post-*Enoch II* Proceedings

The defendants moved for summary judgment on remand. They argued that the plaintiffs' remaining official capacity claim—the ratification claim—failed because the *Enoch II* court held that Enoch and Corbin did not suffer any constitutional injury. They also argued that any official capacity claims failed because the plaintiffs did not satisfy the *Nieves* exception. The district court disagreed, holding that "[t]here are genuine issues of fact as to whether [the] plaintiffs can establish that the *Nieves* exception applies in this case," and whether the deputies acted pursuant to a County policy, custom, or practice. Order on Mot. for Summ. J., R. 120, PageID 2061. The court held that the plaintiffs "can proceed under the theory that the deputies were enforcing an official policy or custom of the County when they arrested plaintiffs for recording events in the hallway of the Hamilton County Courthouse while other similarly situated individuals were not arrested." *Id.*, PageID 2063.

### E. Trial

At trial, the defendants moved for judgment as a matter of law at the close of the plaintiffs' case, and they renewed their motion at the close of evidence. They argued that the plaintiffs did not show that Hogan or Nobles acted with a retaliatory motive, and that under *Nieves*, no evidence showed that similarly situated individuals not engaged in the same sort of speech were not arrested. Instead, the defendants posited that Enoch was arrested because she harassed Perry while

following him down the hallway—conduct that is not protected under the First Amendment. As to the plaintiffs' *Monell* theory, the defendants argued that insufficient evidence showed "that there was any policy of the sheriff, separate from Local Rule 33, that govern[s] recording," and that the failure-to-train claim lacked evidentiary support. Mot. for J. as a Matter of Law, R. 193, PageID 3479.

The district court denied the defendants' motions. The court held that Enoch demonstrated that she was engaged in protected speech when she recorded for her case study, that others in the hallway who were engaged in the same protected activity were not arrested, and that the protected activity was a motivating factor leading to her arrest. The court also found that sufficient evidence supported the *Monell* claim because Hogan and Nobles testified that her arrest was in accordance with Sheriff's Department policy and training.

The jury found in Enoch's favor and awarded her $35,000 in damages. On Enoch's motion, the district court awarded an additional $546,621.29 in attorney's fees and costs under 42 U.S.C. § 1988.

## II.

The defendants challenge several of the district court's rulings on appeal. They contend that the court erred by (1) permitting the plaintiffs to proceed to trial on theories of *Monell* liability that were not properly pleaded in the Complaint; (2) instructing the jury that the *Nieves* exception applies to the speech-based retaliation claim; (3) excluding testimony interpreting Rule 33; (4) denying their motion for judgment as a matter of law; and (5) failing to reduce the attorney's fees award to Enoch's counsel. Because we conclude that the district court erred in denying the defendants' motion for judgment as a matter of law, we do not reach their remaining arguments.

**A. Judgment as a Matter of Law**

We review a district court's denial of judgment as a matter of law de novo. *Szekeres v. CSX Transp., Inc.*, 731 F.3d 592, 597 (6th Cir. 2013); *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 358 n.10 (6th Cir. 2006). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996). In reviewing a Rule 50(a) motion, we view the evidence "in the light most favorable to the party against whom the motion is made" and give that party "the benefit of all reasonable inferences." *K&T Enters.*, 97 F.3d at 176.

Enoch proceeded to trial on the theory that her arrest for recording in the hallway violated her right to free speech under the First Amendment. To prevail on her speech-based retaliation claim, Enoch was required to show that (1) she was engaged in protected conduct, (2) the deputies took an adverse action causing her "'to suffer an injury that would likely chill a person of ordinary firmness' from continuing that activity," and (3) the officers' actions were motivated, in part, by the exercise of her First Amendment rights. *Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019) (quoting *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010)). Because only her official capacity claim survived summary judgment, Enoch also needed to show "that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

We begin by determining whether Enoch was engaged in protected conduct. "Absent protected conduct, [Enoch] cannot establish a constitutional violation." *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc) (plurality opinion). Throughout the trial, Enoch

claimed that she was arrested for (1) recording in the courthouse hallway, or (2) talking back to Hogan and Nobles when confronted over her use of the iPad. We consider each claim in turn.

*Recording.* Enoch primarily claimed that she was arrested because she was recording in the courthouse hallway. She argues on appeal that her recording activities are "unquestionably protected by the First Amendment under *Richmond Newspapers* and *Enoch I*." Second Br. at 55 (citing *Richmond Newspapers v. Virginia*, 448 U.S. 555, 586 (1980); *Enoch I*, 728 F. App'x at 456). In *Richmond Newspapers*, the Supreme Court held that the public's general right to attend criminal trials is "implicit in the guarantees of the First Amendment." 448 U.S. at 580. The Court emphasized that attending a trial is necessary to protect the public's ability to collect and communicate information about that trial, as "without some protection for seeking out the news, freedom of the press could be eviscerated." *Id.* at 576 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). However, neither the Supreme Court nor our circuit has held that the right to attend judicial proceedings encompasses an unqualified right to record those proceedings or the happenings in courthouse hallways.

In a nonpublic forum like a courthouse, "the First Amendment rights of everyone . . . are at their constitutional nadir." *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005); *see also Conway v. United States*, 852 F.2d 187, 188–89 (6th Cir. 1988) (holding that the First Amendment does not guarantee the right to record judicial proceedings) (per curiam); *United States v. Hastings*, 695 F.2d 1278, 1280 (11th Cir. 1983) (noting that the "right of access to observe criminal trials" does not extend to "the right to televise, record, and broadcast trials"). Enoch's recording took place in the hallway outside the courtroom, rather than in the courtroom itself. We previously deemed the courthouse hallway a limited public forum, where her right to gather news about matters of public importance could be restricted by regulations that are "viewpoint neutral and 'reasonable in the

light of the purpose to be served by the forum.'" *Enoch II*, 818 F. App'x at 405 (quoting *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019)); *Richmond Newspapers*, 448 U.S. at 577–78. We further held in *Enoch II* that Rule 33 was such a reasonable, viewpoint-neutral restriction—a holding that Enoch does not dispute on appeal. 818 F. App'x at 405. And even if she did, she has not presented any change in the law or facts that would justify reconsidering that conclusion. 818 F. App'x at 405; *see United States v. Clark*, 225 F. App'x 376, 379 (6th Cir. 2007) ("Because [a prior panel of] this Court has already decided this exact issue, it has become law-of-the-case and is binding upon the district court after remand and upon us in this appeal.").

At trial, Enoch claimed that the deputies' enforcement of the Rule, and not the Rule itself, was retaliatory. She argued that by applying the Rule in the courthouse hallway, an area that was not listed as a place where recording was expressly banned and that had not been deemed an ancillary area, Hogan and Nobles arrested her for lawful conduct that was entitled to First Amendment protection. For their part, the defendants argued that the Rule could have applied to the hallway as an "ancillary area," even if a judge did not enter an order to that effect. But even if Rule 33 did not extend to the courthouse hallway, that fact does not require the conclusion that Enoch's conduct was protected under the First Amendment.

In other words, our conclusion that Enoch failed to establish that she engaged in protected activity does not hinge on whether Rule 33 applies to the courthouse hallway. If the rule does apply, then Enoch was arrested for violating a content-neutral restriction on her speech in a limited public forum. If it does not, the deputies' application of the Rule did not transform her recording into an activity deserving First Amendment protection. Regardless of whether the application of the Rule to the hallway was express or implied, Enoch failed to show that her arrest resulted from anything other than a violation of a reasonable, content-neutral restriction on speech.

The district court found that Enoch engaged in protected activity because of our statement in *Enoch I* that "the First Amendment protects the rights of both the media and the general public to attend and share information about the conduct of trials." R. 193, PageID 3505. But *Enoch I* did not recognize a First Amendment right to record in a courthouse hallway. Rather, in ruling on the defendants' motion for judgment on the pleadings, we found that the plaintiffs had alleged a violation of their First Amendment rights after accepting the plaintiffs' allegation in the Complaint that they had not violated any courthouse rules. *Enoch I*, 728 F. App'x at 456.

Our holding in *Enoch II* similarly does not establish that Enoch was engaged in protected activity. In discussing the plaintiffs' speech-based retaliation claim, we held that the deputies were entitled to qualified immunity because no clearly established law held that an officer could be liable for retaliating against someone whose arrest was supported by probable cause. *Enoch II*, 818 F. App'x at 405–06. Because we resolved the claim by holding that law enforcement's arrest was supported by probable cause, we had no occasion to hold that Enoch's conduct was protected. Enoch cannot rely on either of our prior decisions to satisfy the first prong of her retaliation claim.

Enoch has not shown that her recording was protected under the First Amendment. The precedent she cites establishes no more than a general right to attend trials and gather newsworthy information. While our prior decisions in this case have recognized that right, Enoch did not meet her burden of showing that those decisions demonstrate that she engaged in protected activity here. Because she failed to show that her recording was protected, her first theory of speech-based retaliation fails as a matter of law.[2]

---

[2] The *Nieves* exception does not apply to Enoch's claim that she was arrested in retaliation for recording. At trial, the district court instructed the jury that for Enoch to prevail on her retaliation claim, she was required to present "objective evidence that she was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech were not arrested." Jury Instr., R. 153, PageID 2402. But that exception applies in cases plagued by the "problem of

***Confronting Deputies.*** Enoch also argued that she was arrested because she refused to comply with the deputies' demands. *See* R. 194, PageID 3678 (counsel for the plaintiffs explaining that Enoch and Corbin were targeted for arrest because "[t]hey were the only two people challenging the deputies on this . . . practice of preventing" recording in the hallway). Although counsel for Enoch disclaimed this theory at oral argument, we nonetheless consider whether she presented sufficient evidence for the jury to consider her claim that she was arrested in retaliation for arguing with Hogan and Nobles. *See* Argument Audio at 19:01–:10.

Even if Enoch could establish retaliation under this theory, she failed to show that the deputies' conduct is attributable to the County. "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478. Enoch argued at trial that the County should be held liable under the first and third theories; namely, that its official policy or custom of enforcing Rule 33 violated Enoch's constitutional rights, and that its training related to the Rule was constitutionally inadequate.

Enoch failed to prove either claim. She presented evidence that Hogan and Nobles acted pursuant to a custom of prohibiting any recording absent authorization from a judge when they

---

causation," or when an official who states that he is motivated by lawful considerations is actually acting out of retaliatory animus. *Nieves*, 587 U.S. at 400 (citation omitted); *see also Gonzalez v. Trevino*, No. 22-1025, 2024 WL 3056010, at *2 (Sup. Ct. June 20, 2024) (recognizing that the *Nieves* exception applies where an arrest occurs in circumstances where "officers have probable cause to make arrests, but typically exercise their discretion not to do so") (quoting *Nieves*, 587 U.S. at 406) (per curiam). No such causal complexity is involved here: Enoch contends that she was arrested because she was recording, and the defendants do not claim otherwise. Indeed, Nobles testified that he arrested Enoch for taking pictures with her iPad at trial. *See* Nobles Test., R. 193, PageID 3413. *Nieves* therefore does not apply to Enoch's retaliation claim.

arrested her, and that their misunderstanding of the Rule was so widespread as to constitute Sheriff's Department policy. But their testimony confirmed that they believed they could arrest someone for recording in violation of Rule 33, not for disagreeing with their enforcement of the Rule. Indeed, Nobles testified that he arrested Enoch to conduct an investigation "relating to her use of her iPad," not because she declined to comply with his request for identification. Nobles Test., R. 193, PageID 3413. And even if Nobles arrested her in retaliation for that speech, there is no evidence suggesting that any County policy or practice motivated his actions. Similarly, the evidence supporting Enoch's failure-to-train claim suggested that officers were trained to prohibit recording in the hallway, where Enoch claims it should have been permitted. No evidence indicated that the deputies were improperly trained on how to respond to citizens who disagreed with their orders.

Enoch did not demonstrate that she was arrested in retaliation for protected conduct, or that her arrest was caused by the County's policy, practice, or its failure to adequately train its employees. We therefore reverse the jury verdict and the judgment of the district court in Enoch's favor. Because we hold that the defendants are entitled to judgment as a matter of law, we do not address the defendants' remaining arguments on appeal.[3] Additionally, seeing as Enoch is no longer a prevailing party, we reverse and vacate the district court's award of attorney's fees to her counsel under 42 U.S.C. § 1988. *See Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019) (recognizing that "[w]hether plaintiffs may obtain attorney's fees [under § 1988] . . . hinges on whether they prevailed").

---

[3] On cross-appeal, Enoch claims that she was entitled to a jury instruction alleging that the County's policies or practices violated her First Amendment rights, independent of her speech-based retaliation claim. Second Br. at 61–65. But as just discussed, she failed to establish that her conduct was entitled to First Amendment protection. As such, even if she had pleaded a First Amendment claim, it would fail as a matter of law and was properly not considered at trial.

### III.

For the foregoing reasons, we reverse the judgment of the district court and vacate its order awarding attorney's fees and costs to counsel for Enoch.